501 So.2d 269 (1986)
Jimmy Lee SPARACELLO, Individually and As Duly Appointed Tutor of Decedent's Minor Children, Theresa Marie Sparacello, and Vincent John Sparacello; Rosa (Rosie) Theresa Sparacello Higgs; Salvador John Sparacello, Jr.; and Samuel John Sparacello
v.
Scott F. ANDREWS, Edward K. Bowman and Roy C. Jensen.
No. 85 CA 0802.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Writ Denied February 13, 1987.
*271 John Degravelles, Baton Rouge, Joseph H. Simpson, Amite, for plaintiff-appellee.
*272 William J. Waguespack, III, New Orleans, for defendants-appellants Edward K. Baumann and Scott Andrews.
Richard Creed, Jr., Baton Rouge, for defendants-appellants Roy C. Jensen and U.S. Fidelity and Guar. Co.
Michael T. Pawlus, Hammond, for Tickfaw Police Dept.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is a suit for damages for the wrongful death of plaintiffs' father, Salvador (Sam) John Sparacello, Sr.

FACTS
On May 23, 1982, defendants Scott F. Andrews, Edward K. Baumann[1] and Roy C. Jensen left New Orleans in Baumann's silver Toyota Celica to go tubing near Tickfaw, Louisiana. On the way to Tickfaw, defendants purchased two cases of beer, some of which was consumed on the trip to Tickfaw and the remainder of which was consumed while tubing.
After their tubing trip down the Tangipahoa River, defendants got into Baumann's car and began driving around the Cherokee Beach campground. Baumann drove the car while Andrews sat in the front seat and Jensen sat in the back seat. Baumann's erratic and dangerous driving came to the attention of Pascal Painter, owner and manager of the campground, who advised defendants that he would not tolerate their dangerous behavior and asked defendants to leave the campground.
Thereafter, the defendants left Cherokee Beach via Highway 442. At approximately 3:30 p.m., defendants made a sudden U-turn in the gravel driveway of the Sparacello tube rental shop, causing gravel to be thrown at Jimmy Dunn, Steve Robertson, Sandra Gennaro, Jimmy Sparacello and the decedent, Sam Sparacello. The decedent, mayor of Tickfaw and a deputy sheriff with the local sheriff's office, cautioned defendants about their dangerous driving.
Defendant Jensen exited the car and inquired as to whether the shop sold cigarettes. When advised that they did not but that the store across the street did, Jensen uttered several obscenities. Decedent advised Jensen not to use that kind of language in the presence of a lady. Jensen responded with more obscenities.
Defendants left, again throwing gravel as the car spun out of the gravel driveway, and proceeded to the store across the street. After purchasing cigarettes, defendants got back into the car, yelled a few more obscenities in the direction of the Sparacello tube rental shop and drove off. As defendants drove off, Jensen made an obscene gesture with his finger toward the crowd in front of the store.
The decedent instructed his son Jimmy to contact police officer Tony Buras and to have Officer Buras stop the defendants' vehicle and bring defendants to him. Officer Buras complied with Sparacello's instructions and had the defendants follow him back to the tube rental shop.
When defendants and Officer Buras arrived at the tube rental shop, the decedent and Jimmy Sparacello, who were still sitting on the porch, approached defendants' vehicle. Decedent then pulled out his badge and displayed it to Andrews, who slapped the badge from decedent's hand. Thereafter, a struggle ensued between Andrews and the decedent. Baumann and Jensen exited the car in an attempt to assist Andrews, but were stopped by Officer Buras and Jimmy Sparacello. Sometime during the struggle, the decedent fell to the ground and died of a heart attack shortly afterward.
Plaintiffs filed suit for damages for the wrongful death of Sam Sparacello against Andrews, Baumann and Jensen. Plaintiffs by supplemental and amending petitions added United States Fidelity and Guaranty Company (USF & G), Jensen's liability insurer, as a party defendant. Baumann and *273 Andrews filed a reconventional demand against Salvador (Sam) John Sparacello, Sr. and his heirs and third-party demands against Officer Buras and the Village of Tickfaw for assault, battery and malicious prosecution. Jensen and USF & G also filed third-party demands against Jimmy Lee Sparacello, Tickfaw Police Department and Officer Tony Buras.
On the first day of trial, the third-party demands were severed from the main demand and were continued. The main demand proceeded to a trial by jury, which rendered judgment in favor of plaintiffs and against defendants for $225,000.00.
From this adverse judgment, defendants Jensen and USF & G appeal, assigning the following errors:
(1) The jury erred in finding that Roy Jensen battered or assaulted Sam Sparacello, or that he engaged in a conspiracy to harm Mr. Sparacello.
(2) The jury erred in failing to find that Sam Sparacello was the aggressor.
(3) The trial court erred in not granting a continuance to defendants, or in the alternative, a mistrial, when Judge Kenneth J. Fogg became ill and was unable to finish trying the case.
(4) The trial court erred in severing and continuing the third-party demand of appellants, but refusing to continue the entire matter.
(5) The trial court erred in failing to grant a dismissal or direct a verdict in favor of appellee, when moved for at the close of plaintiffs' evidence.
(6) The trial court erred in giving plaintiffs' requested jury charge No. 11.
(7) The trial court erred in giving plaintiffs' requested jury charge No. 4.
(8) The trial court erred in failing to give defendants' requested jury charge No. 1 and No. 2 on the issue of causation.
(9) The jury erred in finding that Roy Jensen's conduct was a cause of Sam Sparacello's death.
(10) The court erred in allowing testimony regarding Mr. Roy Jensen's use of marijuana.
(11) The trial court erred in allowing testimony concerning the events that occurred at Cherokee Beach.
(12) The trial court erred in failing to lift the ban on discussion of criminal proceedings.

ASSIGNMENT OF ERROR NO. 3

(Motion for Continuance)
Defendants contend that the trial judge erred in not granting defendants a continuance.
As the record reflects, this matter was tried by jury with Judge Kenneth J. Fogg presiding on October 31 and November 1, 1984. However, on November 2, 1984, Judge Gordon E. Causey presided because Judge Fogg was ill. Defendants Jensen and USF & G requested a continuance, which was denied. Defendants reason that at the close of plaintiffs' case, they intended to file a motion to dismiss, on which Judge Causey would be unable to rule. They, therefore, reason that the trial judge erred in denying the motion for continuance.
The Louisiana Code of Civil Procedure provides the mechanism with which a court may grant or deny a motion to continue. LSA-C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. Under this article, a continuance rests within the sound discretion of the trial court. Armstrong v. State Farm Fire & Casualty Company, 423 So.2d 79 (La.App. 1st Cir.1982). A trial judge must look to the facts of each case when a motion to continue is requested. Katz v. Melancon, 467 So.2d 1284 (La.App. 4th Cir.1985). Among the factors a trial judge considers before granting a continuance are diligence, good faith and reasonable grounds. Katz v. Melancon, supra. Weighed against the possibility of injustice, unfairness and inequity, which might result from a premature trial, is the effect that a continuance might have on the administration of justice, including congested court dockets, and just as important, a defendant's corollary right to have *274 serious charges against him judicially resolved within a reasonable time. Dubea v. State, Louisiana Department of Corrections, 465 So.2d 245 (La.App. 3rd Cir.1985); Patterson v. Leggio, 347 So.2d 1262 (La. App. 1st Cir.1977).
A trial judge has wide discretion in acting upon a continuance. His ruling will not be disturbed on appeal in the absence of a clear showing of abuse of that discretion. Dubea v. State, Louisiana Department of Corrections, supra. Appellate courts only interfere in such matters with reluctance and in extreme cases. Armstrong v. State Farm Fire & Casualty Company, supra; Superior Oil Company v. Van Breemen, 378 So.2d 444 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 1101 (La.1980).
In the case sub judice, in denying defendants' motion for continuance, the trial judge stated:
THE COURT: Gentlemen, in the spirit of judicial economy, as well as judicial efficiency and considering that the jurors have been here for two days, I'm going to go ahead and complete the trial on behalf of Judge Fogg.
Although the granting of a continuance would seem to have been more appropriate, and while we do not consider it the better practice to substitute the trial judge in the middle of a trial, we cannot say that defendants were in any way prejudiced as a result of the substitution in the case sub judice. Although such a practice can result in prejudicial error affecting the litigants, we do not find prejudicial error in the instant case. The finder of fact in a jury trial is the jury and not the judge. The jury, the attorneys, the witnesses and the parties had proceeded through two full days of trial, and the judge determined that the spirit of judicial economy and efficiency required that the continuance be denied.
A trial judge has the inherent power to take reasonable actions to control his docket. Sather v. White, 388 So.2d 402 (La.App. 1st Cir.1980). After a thorough review of the record, we cannot say that prejudicial error occurred or that the trial judge abused his much discretion in denying defendants' motion for continuance.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4

(Motion for Severance)
Defendants contend that the trial court erred in severing trial of the third-party demands from the trial of the main demand.
The trial court has authority to order a separate trial of properly cumulated actions at any time prior to trial, if severance would simplify the proceedings, permit a more orderly disposition of the case, or otherwise would be in the interest of justice. See LSA-C.C.P. art. 465; White v. Cumis Insurance Society, 415 So.2d 574 (La.App. 3rd Cir.1982), writ denied, 420 So.2d 164 (La.1982). The trial court has discretion in determining whether the incidental demands are to be tried with the main demand. Whitener v. Clark, 356 So.2d 1094 (La.App. 2nd Cir.1978), writs denied, 358 So.2d 638, 641 (La.1978).
The record in the instant case reflects that suit on the main demand was filed on May 13, 1983. Thereafter, on August 30, 1984, appellants filed third-party demands against Jimmy Lee Sparacello, Officer Tony Buras and the Tickfaw Police Department. On September 7, 1984, the Tickfaw Police Department filed a motion for extension of time in which to answer. On October 9, 1984, Jimmy Lee Sparacello filed an answer to Jensen's third-party demand. Two days later, on October 11, 1984, the Tickfaw Police Department filed an answer.
The counsel for the Tickfaw Police Department requested that trial of the third-party demand be continued. Counsel reasoned that he was entitled to a continuance because he had not received legal notice of the trial date, he had not examined the depositions, nor had he received the complete pleadings. Additionally, Tony Buras, one of the third-party defendants, had not *275 answered the third-party demand and was not represented by counsel at trial.
The trial judge obviously felt that the third-party defendants, the Tickfaw Police Department and Tony Buras, did not have a reasonable opportunity to adequately respond to the charges against them. The third-party demands were severed from the main demand and tried separately at a later date in the interest of justice. A review of the record convinces us that the trial judge did not err in granting the third-party defendants' motion for severance.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5

(Motion for Directed Verdict)
In this assignment of error, defendants contend that the trial judge erred in failing to grant a directed verdict at the close of plaintiffs' case. Defendants reason that plaintiffs introduced no evidence to establish that defendant Roy Jensen assaulted, battered or conspired with others to assault or batter Sam Sparacello.
Pursuant to LSA-C.C.P. art. 1810, a directed verdict may be granted in favor of the moving party if the facts and reasonable inferences taken from the evidence are so overwhelmingly in favor of the moving party that the trial judge believes that reasonable men could not arrive at a contrary verdict. Bessie v. K-Mart Apparel Fashions Corporation, 472 So.2d 251 (La.App. 1st Cir.1985); Clark v. Laird, 458 So.2d 639 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 210 (La.1985). In jury trials, the judge should view the evidence in a light most favorable to the non-moving party in ruling on the motion for directed verdict. Clark v. Laird, supra.
A trial judge has much discretion in determining whether to grant a directed verdict. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.1984), writ denied 458 So.2d 476 (La.1984). On appeal, we must review and interpret the facts and evidence in a light most favorable to the party opposing to determine whether the motion was properly granted or denied. Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir.1981).
After thoroughly reviewing the record, considered in the light most favorable to the plaintiffs, we find that this assignment is without merit. There was testimony from the witnesses, including the defendants, that Roy Jensen participated in the incident immediately preceding the death of Sam Sparacello, including shouting obscenities and making obscene gestures.
Further, it is clear that Jensen exited the vehicle from the rear seat and moved toward the altercation when he encountered Jimmy Sparacello. Although Jensen testified that he was only attempting to run away from the struggle with the decedent, Officer Buras and Jimmy Sparacello, the jury apparently concluded that he was attempting to aid the other defendants in the struggle with the decedent.
In light of this testimony and the other evidence presented, we find, as did the trial judge, that reasonable triers of fact could and, in fact, did arrive at a verdict contrary to defendants. Cf. Tabb v. Norred, 277 So.2d 223 (La.App. 3rd Cir.1973), writ refused 279 So.2d 694 (La.1973). Cf. also Noel v. Demouchette, 410 So.2d 1291 (La. App. 3rd Cir.1982), (wherein the co-defendants did not provoke, encourage or participate in the shooting incident. The evidence established that the co-defendants did not even exit the vehicle during the commission of the shooting). Accordingly, the motion for directed verdict was properly denied.

ASSIGNMENTS OF ERROR NOS. 6, 7 & 8

(Jury Instructions)
In these assignments of error, defendants contend that the trial judge erred in giving certain jury instructions and in failing to give other jury instructions. Specifically, defendants contend that the trial judge erred in giving plaintiffs' requested jury charges Nos. 11 and 4 and in failing to *276 give defendants' requested jury charge Nos. 1 and 2.
The plaintiffs' requested jury instructions provided as follows:
PLAINTIFF'S REQUESTED JURY CHARGE NO. 4
Plaintiffs charge that the conduct of these defendants (individually and in concert with each other) caused the heart attack and death of decedent in the following particulars:
1. By verbally assaulting the decedent, Mr. Sparacello;
2. By committing a physical battery upon the person of Mr. Sparacello;
3. By placing the decedent in fear of bodily injury;
4. By participating in actions and using language designed and intended to promote and create in the decedent great emotional distress, fear, anger and apprehension.
PLAINTIFF'S REQUESTED JURY CHARGE NO. 11
I instruct you that in addition to the torts of battery and assault, `one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress' and for bodily harm [or death] resulting therefrom.

Restatement of Torts (2d), § 46 (1965); Nickerson v. Hodges, 146 La. 735, 84 So. 37 (1920); Moody v. Kenny, 153 La. 1007, 97 So. 21 (1923); Malczewski v. New Orleans Ry. & Light Company, 156 La. 830, 101 So. 213 (1924); Prosser & Keeton on Torts, § 12 (1984).
The defendants' requested jury instructions provided as follows:
DEFENDANTS' REQUESTED JURY CHARGES NO. 1
To find United States Fidelity & Guaranty Company and its insured, Roy C. Jensen, III, liable to plaintiff you must find that Roy C. Jensen, III's conduct was a cause in fact of the death of Salvatore (Sam) John Sparacello, Sr. In making this determination, you should consider the following:
1. Every act leading up to an accident cannot be said to be a cause in fact. The act must be a necessary ingredient of the accident to constitute a cause in fact. The act must be a substantial factor, without which the accident or in this case death would not have occurred. The act must have a direct relationship to the accident. The injury or in this case death must be a natural, probable and foreseeable consequence of the defendant's conduct.
Ducote v. Voorhies
350 So.2d 1289 (3rd Cir., 1977)
Follins v. Barrow
354 So.2d 609 (1st Cir., 1977)
Herbert v. Maryland Casualty Company
366 So.2d 1044 (1st Cir., 1978)
Laird v. Travelers Insurance Company
263 La. 199, 267 So.2d 714 (1972)
Brown v. Louisiana Department of Highways
373 So.2d 605 (3rd Cir., 1979)
LeJeune v. Allstate Insurance Company
365 So.2d 471 (La.1978)
DEFENDANTS' REQUESTED JURY CHARGES NO. 2
In determining whether or not Roy C. Jensen, III's conduct was a cause in fact of the death of Salvatore (Sam) John Sparacello, Sr., you should consider whether of or not there were intervening acts or conduct which became the cause in fact of his death. You must decide in favor of Roy C. Jensen, III and USF & G if you find that the conduct of Roy C. Jensen, III became a passive cause, to remote in point of time or consequence of events; and, instead, subsequent conduct intervening between the conduct of Roy C. Jensen, III and the resulting harm as *277 more proximately related to the injury or in this case death; and that this latter conduct put in motion a new chain of events and became the independent and primary cause of the injury or in this case death flowing directly therefrom.
Reeves v. Louisiana and Arkansas Railway Company
282 So.2d 503 (La.1973)
Theunissen v. Guidry
244 La. 631, 153 So.2d 869 (La.1963)
Townsend v. Missouri Pacific R.C.
163 La. 872, 113 So.2d 130 (La.1927)
Spiers v. Consolidated Company
241 La. 1012, 132 So.2d 879 (La.1961)
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Beck v. Lovell, 361 So.2d 245 (La.App. 1st Cir.1978), writ denied, 362 So.2d 802 (La.1978). Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Davidson v. Peden, 413 So.2d 568 (La.App. 1st cir. 1982).
The judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law. It is the judge's responsibility to reduce the possibility of confusing the jury, and he may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate. Arnouville v. Joiner Enterprises, Inc., 423 So.2d 1246 (La.App. 5th Cir.1982), writ denied, 430 So.2d 76 (La.1983).
After carefully reviewing the trial judge's instructions and the requested jury instructions in light of the facts and pleadings of this case, we find the instructions as given by the trial judge were adequate.
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 12
In this assignment of error, defendants contend that the trial judge erred in failing to lift the ban on discussion of criminal proceedings after the opposing counsel violated the ban.
Prior to trial, plaintiffs requested that the court issue an order preventing any party from referring to the grand jury proceeding, and its results, and to any language contained in the coroner's report. Defendants opposed the motion, but requested that, if the court granted plaintiffs' motion, the order also preclude any reference to arrests or charges brought against Jensen, Andrews and Baumann. The trial judge granted the motion, ordering that there be no mention of any criminal charges and, specifically, no mention of any grand jury proceedings. Thereafter, the following colloquy between plaintiffs' counsel and Jensen took place:
Q. Now, you pled guilty to disturbing the peace in this case, did you not, sir?
MR. CREED: Your Honor, I'm going to object to that line of questioning, but the witness can go ahead and answer the question.
BY THE WITNESS:
A. I'm not sure if I did or not, but I paid $140. to get out of jail. I didn't plead.
Although counsel for defendants properly objected to this line of questioning, any objection was subsequently waived by advising his client to answer the question before the judge ruled on the objection. Moity v. Guillory, 430 So.2d 1243 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1148 (La.1983). Further, counsel for defendants neither requested that the ban be lifted nor attempted to ask questions regarding the prohibited information.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 1, 2 & 9
In these assignments of error, defendants contend that various factual findings *278 are erroneous. Specifically, defendants contend that the jury erred in finding that defendant Jensen battered, assaulted or conspired to harm decedent, in not finding that decedent was the aggressor, and in finding that Jensen's conduct was a cause-in-fact of decedent's death.
In Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985), the Louisiana Supreme Court set forth the standard of conduct required of persons in their relationships with one another as follows at p. 908-909:
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ. Code arts. 2315 and 2316.
Article 2315 provides in the pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Under these articles, the elements of a cause of action are fault, causation and damage. The conduct of which plaintiff complains must be a cause-in-fact of the harm. After determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. Dunne v. Orleans Parish School Bd., 463 So.2d 1267 (La.1985); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984); Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983).
Negligence is only actionable where it is both a cause-in-fact of the injury and a legal cause of the injury. Carter v. Dr. Pepper Bottling Company of Baton Rouge, Inc., 470 So.2d 496 (La.App. 1st Cir.1985). Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character. Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La. 1973); Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Ishee v. State, Department of Transportation and Development, 413 So.2d 1362 (La.App. 1st Cir.1982).
A reviewing court must give great weight to the factual conclusions arrived at by the trier of fact and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973); Lucido v. Aetna Life and Casualty Company, 411 So.2d 608 (La.App. 1st Cir.1982). As noted by this court in Lucido v. Aetna Life and Casualty Company, supra at 610, "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared to the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between respective courts."
In the case sub judice, the jury found that defendants Baumann, Andrews, Jensen and USF & G were liable to plaintiffs for the wrongful death of Sam Sparacello.
The evidence presented at trial as to the events immediately preceeding the death of Sam Sparacello is conflicting.
Defendants Jensen and Andrews testified that Baumann made a sudden U-Turn in front of the Sparacello store, causing the car to skid and throw gravel. Jensen stated that as he got out of the car to purchase cigarettes, he stubbed his toe on a rock and uttered a few obscenities to himself. Jensen testified he then inquired as to whether the store sold cigarettes. According to *279 Jensen and Andrews, Sparacello responded with obscenities and told defendants to go elsewhere. Defendants then promptly left. After purchasing cigarettes across the street, Jensen got into the car and made an obscene gesture toward the crowd at the Sparacello store. The defendants were later stopped by Officer Buras and returned to the Sparacello store. When they arrived at the store, the officer asked the defendants to get out of the car, whereupon Baumann was thrown against the car and Andrews was hit. Thereafter, according to Jensen and Andrews, ten to twelve people, including decedent, jumped the defendants.
Defendant Baumann testified he made a sharp U-turn into the Sparacello driveway and that he neither saw nor heard anything until he was pulled over by the police. When defendants stopped, the officer took Baumann's license and asked him to follow. At the store, the officer approached the vehicle, and Baumann got out of the car. Whereupon, Jimmy Sparacello and a black man hit him. Baumann then testified he saw and heard nothing until he noticed that there was a scuffle behind him. Thereafter, Baumann jumped in his car and attempted to leave, but Jimmy Sparacello tried to retrieve the keys from the ignition.
Sandra Gennaro, girlfriend of Jimmy Sparacello at the time of the incident and divorced from him at trial, also testified as to the events at the Sparacello store. Ms. Gennaro originally told the FBI that Andrews struck decedent first. At trial, however, Ms. Gennaro testified that decedent and Baumann yelled at one another and that decedent hit one of the defendants first, after which one of the defendants slapped the badge out of decedent's hand. She further testified that during the fight with defendants, decedent fell to the ground.
Officer Tony Buras testified that on May 23, 1982, he responded to a call from Jimmy Sparacello about a disturbance at the tube rental shop. Officer Buras located defendants, took Baumann's license and asked defendants to follow him. Upon arriving at the tube rental shop but before getting out of the car, Officer Buras heard Sam identify himself as Mayor of Tickfaw and as a deputy sheriff. Whereupon, one of the defendants yelled obscenities to Sam. After exiting the car, Officer Buras found Baumann and Jimmy Sparacello fighting. Officer Buras and Jimmy Dunn then broke up the fight. Officer Buras also overheard Andrews and Sam arguing and then saw Sam fall to the ground.
Jimmy Dunn, who was sitting on the porch at the time of the incident, testified that when defendants returned with Officer Buras, Sam identified himself only to have his badge slapped from his hand by one of the defendants. When the other defendants attempted to assist their friend, Dunn took the defendant who was fighting with Jimmy Sparacello by the hand and returned him to his seat. Dunn also observed Jimmy Sparacello try to turn the ignition off as defendants attempted to escape. Steve Robertson also observed the events leading up to Sam's death, and his testimony is similar to that of Mr. Dunn.
Dr. Ralph Maxwell, III, who was accepted as an expert in the field of general medicine and in executing the duties of coroner, testified that decedent died of acute cardiovascular arrest, secondary to severe atherosclerotic vascular disease, secondary to acute myocardial infarction. Based on decedent's medical history and physical appearance, Dr. Maxwell opined that the excitement from the events of May 23, 1982, along with the resulting physical and emotional exertion, precipitated Sam Sparacello's death.
The jury observed the demeanor of the witnesses and elected to believe the plaintiffs' version of the events rather than the testimony elicited by defendants' witnesses. Defendants' testimony and that of other witnesses testifying on their behalf is suspect and fraught with inconsistencies. Additionally, the uncontradicted testimony of Dr. Ralph Maxwell, III established that decedent's death was precipitated by the altercation with defendants at the tube rental shop. There was sufficient evidence for the jury to conclude that the defendants *280 were acting in concert with one another and each contributed in some significant way to the aggressive action and resulting altercation. See Tabb v. Norred, supra and Noel v. Demouchette, supra. The factual findings of the triers of fact were based on reasonable inferences of fact and, after thoroughly reviewing the record, we cannot say that their findings were manifestly erroneous.
These assignments are without merit.

ASSIGNMENTS OF ERROR NOS. 10 & 11
In these assignments of error, defendants contend that the trial judge erred in allowing defendant Jensen to testify regarding his use of marijuana and in allowing the testimony of Pascal Painter regarding the events at Cherokee Beach preceeding the altercation with decedent at the tube rental shop. Defendants reason that testimony regarding Jensen's use of marijuana and Painter's testimony regarding the incident at Cherokee Beach are irrelevant. Defendants reason that this testimony was introduced solely to prejudice the jury against Jensen.
However, a careful examination reveals that the questioned testimony was elicited for impeachment purposes.
When questioned as to their usage of marijuana, and in particular their usage of marijuana on the day in question, Jensen gave a response different from the response he had given in an earlier deposition. Clearly, the varying responses were important to impeach the witness's credibility.
Similarly, although Jensen and Andrews admitted to being cautioned by Painter for their reckless and erratic driving, Baumann denied seeing the owner/manager of Cherokee Beach or being cautioned by him. Clearly, the testimony of Pascal Painter regarding his encounter with the defendants was important to impeach the witness's credibility.
These assignments are without merit.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
I concur in the result. In particular, I believe that defendants' assignments of error 10 and 11 have some merit, but I cannot say, based on the record, that these errors had any substantial bearing on the jury's verdict.
Jensen's social use of marijuana at other times was irrelevant, and evidence relating to it was far more prejudicial than probative. In the same vein, so was any evidence of Baumann's erratic driving while at Cherokee Beach and before the altercation with the Sparacello's began.
I respectfully concur.
NOTES
[1] Edward K. Baumann was improperly referred to in plaintiffs' petition as Edward K. Bowman.