525 So.2d 1263 (1988)
Linda Faye DIGGS
v.
Albert Joseph TYLER.
No. CA 87 1617.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1264 Linda B. Watkins, Baton Rouge, for plaintiff-appellee Linda Faye Diggs.
Robert J. Eames, Baton Rouge, for defendant-appellant Albert Joseph Tyler.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a child custody proceeding instituted by a maternal aunt against the father of five minor children. The trial court awarded the custody of the children to the aunt. The father took this devolutive appeal.

FACTS
On September 25, 1969, Rosemarie and Albert J. Tyler, Sr. were married. Of that marriage, five children were born, namely: Albert, Jr.,[1] Timothy, Chandra, Charhonda and Julie. In June of 1979, Rosemarie Tyler died. After her death, the children were in the care and custody of their father.
On August 7, 1986, Linda Faye Diggs, sister of the deceased, filed a petition for custody naming Albert Tyler as defendant. Diggs' petition contained the following allegations:

3.
Since that time, June 18, 1979, the five (5) children of the marriage have been in the legal custody of defendant, but they have spent nearly every weekend in the home of Linda Faye Diggs, plaintiff herein. At other times the children are in the care of others, not in the care of Albert Joseph Tyler, Sr.

4.
On Wednesday, July 23rd, 1986, defendant was arrested for child molestation and abuse of petitioner's child, Laura Diggs, after numerous complaints to various authorities by Linda Diggs.

5.
School authorities had previously complained to defendant and other authorities of the lack of care and proper clothing of the Tyler children, to no avail.

6.
Petitioner, Linda Faye Diggs, fears that if the defendant is allowed to continue in his care of the children they will be raised in an abnormal, immoral, destructive atmosphere to their detriment. For this reason Linda Fae (sic) Diggs desires that the children remain in her care.
On the same day that Diggs filed her petition, an order was signed by the trial judge restraining Tyler from removing the five minor children from the care of Diggs.
Tyler filed a peremptory exception raising the objections of no cause and no right of action. On November 13, 1986, the trial judge overruled the exception and dissolved the restraining order against Tyler for failure of Diggs to verify prior to filing and for failure to post a bond.
On December 16, 1986, an emergency custody hearing was held. On December 23, 1986, the trial judge signed a continuing custody judgment restraining Tyler from removing the five minor children from the care of Diggs until a full hearing could be held.
On February 23, 1987, a hearing on the merits was held. At the hearing, Diggs presented several witnesses, including one of the minor children, Julie Tyler, age 12, and Diggs' daughter, Laura James, age 11. Their testimony was given in the judge's chambers. Trial was continued on July 22, 1987.
On the morning of July 22, 1987, Tyler's attorney received a phone call from Diggs' attorney inquiring as to whether he and his client were coming to court for the hearing. Tyler's attorney proceeded to court and made an oral motion for a continuance, arguing that he believed the hearing date *1265 was continued to July 27, 1987. The trial court denied the motion.
On July 23, 1987, the court entered judgment awarding custody of the five minor children to Diggs.

CONTINUANCE

(Assignment of Error Number 1)
Defendant argues that the trial court erred in denying his motion for continuance. Defendant contends that, because he did not receive written notice of the trial date, pursuant to La.C.C.P. art. 1571 and Rule 7, Section 2, of the Family Court of East Baton Rouge Parish, he was denied his right to due process of law as guaranteed by the United States and Louisiana Constitutions.
La.C.C.P. art. 1571 provides as follows:
The district courts shall prescribe the procedure for assigning cases for trial, by rules which shall:
(1) Require adequate notice of trial to all parties; and
(2) Prescribe the order of preference in accordance with law.
These rules shall not allow the assignment of ordinary proceedings for trial except after answer filed.
Comment (a) of La.C.C.P. art. 1571 provides as follows:
Adequate notice is a minimum requirement for reasons of due process. Except as provided in Art. 1572, infra, no particular type or kind of notice is required, since the matter is to be regulated by the local rules of court. (Bolding added.)
The East Baton Rouge Parish Family Court Rule 7, Section 2, states, in pertinent part, as follows:
Within twenty-four hours after an assignment is made and at least fourteen (14) days prior to the date assigned for trial or hearing, the Clerk of Court shall mail a written notice of the assignment to counsel for all parties or to every party thereto not represented by counsel.
However, Rule 7, Section 3, of the East Baton Rouge Parish Family Court Rules provides as follows:
Assignments may also be made by consent of all parties to a case or their counsel without complying with the provisions of Section 2 or 6 of this rule.
The transcript of the oral motion for continuance indicates that counsel for the parties agreed to the assignment of the case. Therefore, under Rule 7, Section 3, of the East Baton Rouge Parish Family Court Rules, Tyler was not entitled to written notice of the assignment. Under Rule 7, Section 3, Tyler's counsel received an adequate notice when he and Diggs' counsel consented to the assignment of the case.
It is well-settled that the trial court has much discretion in granting a motion for a continuance and its ruling should not be disturbed on appeal in the absence of clear abuse. Sparacello v. Andrews, 501 So.2d 269 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987). No abuse of discretion by the trial judge has been demonstrated.
This assignment of error lacks merit.

TESTIMONY OF CHILDREN IN CHAMBERS

(Assignment of Error Number 3)
Tyler argues that the trial court erred in allowing two minor children to testify out of his presence in the judge's chambers. Tyler argues that his due process rights to a fair hearing were violated because he was not allowed in chambers when the minor children were questioned.
There are no statutory provisions in the East Baton Rouge Parish Family Court Rules or the Louisiana Code of Civil Procedure that deal with the testimony of children under these circumstances. Further, there is very little jurisprudence on point. However, in the case of Watermeier v. Watermeier, 462 So.2d 1272, 1275 (La.App. 5th Cir.), writ denied, 464 So.2d 301 (La.1985), the court established the following guidelines for taking the testimony of children out of the presence of a parent:

[T]he interview must be conducted in chambers outside of the presence of the *1266 parents, but in the presence of their attorneys, with a record being made by the court reporter. The judge shall first determine his competency as "a person of proper understanding" by interrogating the child with appropriate questions. The attorneys shall be allowed to participate in the competency examination by asking questions and registering appropriate but only necessary objections. If the judge determines that the child is not a competent witness as outlined above, he shall immediately terminate the interview. (Emphasis added.)
See also Dykes v. Dykes, 488 So.2d 368 (La.App. 3rd Cir.), writ denied, 489 So.2d 1278 (La.1986); Comment, Child Custody: The Judicial Interview of the Child, 47 La.L.Rev. 559 (1987). Accordingly, we hold that a trial judge may interview a child in chambers so that the child can testify freely and without intimidation from his or her parents, if these guidelines are met. Osborne v. McCoy, 485 So.2d 150 (La.App. 2nd Cir.), writ denied, 488 So.2d 1027 (La. 1986).
In the present case, the two minor children were interviewed in the judge's chambers, and the attorneys for both parties were present. Both attorneys were allowed to question the children. The court reporter was also present, and a record of the children's testimony was made. Therefore, we find that the guidelines set forth in the Watermeier case were followed, and defendant suffered no prejudice.
This assignment of error is without merit.

CHANGE FROM PARENTAL CUSTODY TO CUSTODY IN MATERNAL AUNT

(Assignment of Error Number 2)
Defendant argues that "[t]he trial court erred in finding that the appellee had proved, by clear and convincing evidence, compelling reasons for depriving appellant of the custody of his five minor children." Appellant submits that the admissible evidence considered by the court was not sufficient to meet the heavy burden of proof required in a parent versus nonparent custody dispute.
La.C.C. art. 146(B) provides as follows:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings.
Article 146 contains a two-pronged requirement which must be met before a parent is denied custody of the child and the child is placed in the custody of a nonparent in a contested custody dispute: (1) the award of custody to the parent must be detrimental to the child, and (2) the award to a nonparent is required to serve the best interest of the child. Gordy v. Langner, 502 So.2d 583 (La.App. 3rd Cir.), writ denied, 503 So.2d 494 (La.1987). See also Carroll v. Carroll, 476 So.2d 976 (La.App. 1st Cir. 1985). By using the term "detrimental", La.C.C. art. 146 allows the trial court to look at a multitude of factors. Gordy v. Langner.
Determinations of the trial court in child custody cases are entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Cassidy v. Cassidy, 514 So.2d 1198 (La.App. 1st Cir.1987), writ denied, 517 So.2d 814 (La.1988); Rutland v. Rutland, 460 So.2d 66 (La.App. 1st Cir.1984). After a review of the record, we find that the trial court did not abuse her discretion in granting custody of the five minor children to Diggs.
Albert Tyler, Jr., the oldest child involved in this custody proceeding, testified at the December 16, 1986 emergency custody hearing that in 1985, while in the care of his father, the children were separated. He testified that his two youngest sisters stayed with a lady named JoAnn, and his oldest sister stayed with JoAnn's cousin. He stated that his father received food stamps for the family, but that his father *1267 gave most of them away or "traded them in." Because of this, they did not have enough food. He also testified that his brother, Timothy, would go to school in poor condition. He stated that Timothy "smelled alot (sic) and he had a bad odor." It was his testimony that Timothy also "skipped" a lot of days of school. When Albert, Jr. would tell his father about it, he would do nothing. He went on to testify that, during the time he stayed with his father, they moved "constantly" and that they did not always have electricity or water in the places where they lived. His father did not provide he and his siblings with enough clothes, and his father gave them no religious instruction. Albert, Jr. further stated that in August of 1986, he and his brother and sisters started staying with their aunt, Linda Diggs. He stated that since that time they have enough food to eat; they have never been without utilities; they have gone to school everyday; she is providing them with clothing; they are adequately cared for by her; and that they receive moral training and religious instruction from Diggs.
Linda Diggs, plaintiff, who testified at the trial on February 23, 1987, stated that Albert, Sr. did not take care of the children when they were in his custody. He did not provide them with adequate food, clothing, or housing. She testified that the children complained to her about the lack of food and clothes and also about living at other people's houses instead of being together. She also testified that the five minor children have been in her care since August of 1986. Since that time, the children go to school regularly and have not been moved from school to school; she helps them with their school work and sees to it that they are clean and well groomed. She testified about several conferences she has had with the children's teachers where they discussed the children's grades and grooming. She stated that the children have enough food and adequate clothing and never are without running water or electricity. She also testified that the children's father has not contributed toward their care since they have been with her, nor has he come to visit them, or contact her in any way about their welfare or well being. She also gave testimony concerning the charges that she and her husband have pressed against Albert, Sr. for sexually abusing one of her children.
Juaquita Antwine, who also testified at the February 23, 1986 trial, stated that she lived with Albert, Sr. and the children from sometime in 1982 to around August of 1985. She stated that Albert, Sr. would often drink and that when he did he would become "grouchy and hateful" and would "yell" at the children. She further testified that, after she moved out, the children were often without electricity, water, food, or soap.
Laura Ann James, the 11 year old daughter of Diggs, testified in the judge's chambers that one night, when she was spending the night with her cousins at Albert, Sr.'s house, Albert, Sr. came into the bedroom where she was sleeping and tried to sexually molest her. She also stated that Albert, Sr. peeped through a large hole in the door while she was taking a bath.
Julie Tyler, age 12, also testified in the judge's chambers. She stated that her father would not buy the children clothes. He would buy "Seagrams Seven one hundred". She stated that her father drank a lot, and, that when he drank, "he would be mean" and "would start hollering at people for nothing." She also stated that her father would send she and her sisters to stay at other people's houses. She stated that she confided in one of her teachers, Ms. Louvier, how the lights were off and how she did not have school supplies. She further stated that, when she was in the care of her father, teachers complained about her grooming.
From the evidence, the trial court was correct in finding that an award of custody to the father, Albert Tyler, Sr., would be detrimental to the children, and the award of custody to Linda Diggs serves the best interest of the five minor children.
This assignment of error is without merit.

*1268 DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant is cast for all costs.
AFFIRMED.
SHORTESS, J., dissents and assigns reasons.
SHORTESS, Judge, dissenting.
I disagree with the majority's treatment of assignment of error number 1. The grant or denial of a continuance under LSA-C.C.P. art. 1601 is entrusted to the sound discretion of the trial court. Sparacello v. Andrews, 501 So.2d 269 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (1987). Due process, at a minimum, requires that a deprivation of life, liberty, or property be preceded by notice and a meaningful opportunity to be heard at a meaningful time. Zachary Taylor Post No. 3784 v. Riley, 481 So.2d 699 (La.App. 1st Cir.1985). The two concepts (due process and discretion in administering the trial docket) are neither mutually exclusive nor necessarily inclusive. A deprivation of one of the articulated interests (life, liberty, or property) without notice and a meaningful opportunity to be heard due to a denial of a continuance would doubtless amount to an abuse of discretion, but exercise of discretion need not intrude upon a constitutional right to be abuse. The significance of a litigant's "day in court" is not limited to bare constitutional minimums.
The sanctity of a litigant's "day in court" has long been recognized by this and other circuits in determining the limits of trial courts' discretion to deny motions to continue. Nola v. Ramsay, 438 So.2d 1139 (La. App. 1st Cir.1983); Halley v. Halley, 457 So.2d 108 (La.App. 2d Cir.), writ denied, 461 So.2d 316 (1984); Marpco, Inc. v. South States Pipe & Supply, 377 So.2d 525 (La.App. 3d Cir.1979). Moreover, it is arguable that the more fundamental the movant's interest at stake, the more scrupulous courts should be in assuring a meaningful "day in court."
In the case at bar, a biological father's custody of his children was involved. His fitness as a parent was at issue. Neither the defendant father nor his witnesses were present at trial. Permanent custody of his children was taken away.
The transcript reveals that defendant's counsel moved for a continuance prior to the beginning of trial asserting that it was his (counsel's) error in misunderstanding the verbal assignment of the case for trial to have been for July 27, 1987, instead of the correct date, July 22, 1987. Counsel asserted that he had notified his client and witnesses that trial was to be on July 27, and that he (counsel) was unaware of his error until the morning of the 22nd when telephoned by opposing counsel.
The importance of the availability of material evidence and material witnesses is recognized in the Code of Civil Procedure. LSA-C.C.P. art. 1602.[1] After the trial court denied defendant's motion to continue, an application for a writ was brought to this court which was denied. Now, on the merits, it has again been disposed of almost summarily. The majority's holding without discussion that a verbal assignment of a trial date is sufficient notice under Rule 7 of the Family Court Rules, does not support the conclusion that the trial court did not abuse its discretion in denying the continuance. The trial court was apprised that defendant's counsel had made an error, through no apparent bad faith, which seriously prejudiced his client's very fundamental right to the custody of his children. Good faith, reasonable grounds, and the degree of injustice or unfairness to the movant are proper considerations in determining the merits of a motion to continue. Sparacello v. Andrews, 501 So.2d at 273. On the other hand, concern for the speedy administration of justice and the opposing party's corollary right to judicial resolution should also be considered. Id.
The transcript reveals concern expressed by the court and by opposing counsel that *1269 the case could not be reassigned for trial before November, 1987a delay of some three months. Defendant's counsel correctly pointed out, though, that the provisional custody decree, whereby custody of the children had been granted to plaintiff, would remain in effect until trial.
The majority has equated sufficiency of notice with a proper exercise of discretion and has failed to adequately address the competing considerations discussed above. Defendant has not only been deprived of his day in court but also of a reasonable explanation why.
I respectfully dissent.
NOTES
[1] Since this appeal was taken, Albert Tyler, Jr. has reached the age of majority.
[1] The peremptory grounds for continuance of Article 1602 are not present in the facts at bar. Nevertheless, evidence and witnesses comprise the whole of a litigant's factual case and Article 1602 recognizes the importance of presenting the entirety of the evidence to the trier of fact.