|2PITCHER, Judge.
James Anthony Rainone (plaintiff) appeals from the judgment of the trial court dismissing his claims against the defendants. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

Plaintiff was employed by United Tugs, Inc. as a deckmate and member of the crew of the MW Dean Thomas. Exxon Corporation (Exxon) was the time charterer of the MW Dean Thomas. On or about April 29, 1989, a barge, number SBX-197, was under tow by the MW Dean Thomas. The MW Dean Thomas and the SBX-197 were tied together as part of a flotilla. Marmac Corporation (Marmac), the owner of the SBX-197, and Exxon had entered into a bareboat charter party on February 26, 1986, with respect to the SBX-197. The bareboat charter agreement involved a complete transfer of possession, command and navigation of the vessel from the owner to the charterer. The SBX-197 was an open hopper barge and, in this instance, was being used to transport oil field pit waste. The voyage of the flotilla originated at the Safe, Inc. dock in Mobile, Alabama, then followed a westerly course, *709 through the Inter coastal Waterway, continuing on this course until it arrived at the Land Treatment Systems Plant in Amelia, Louisiana. The voyage of the flotilla took approximately three days.
Plaintiff filed suit against Exxon, United Tugs, Inc. and Marmac.[1] In his petition, plaintiff alleged that the operation of the flotilla caused him to inhale toxic fumes from unknown waste material aboard the barges, resulting in injury.
On July 1, 1992, the trial of this matter was consolidated with a suit arising out of the same facts (Delta Orgeron, Wife of/and Adolph Orgeron v. Exxon Corporation, et al, Suit Number 65,961).[2] Pursuant to a status conference order signed on September 21, 1992, a trial in this matter was set for July 1-29,131993 as a “firm first fixing”. However, approximately one month before the trial was to begin, a dispute arose between plaintiff and his two attorneys, Joseph DeSonier and John Robin. As a result of this dispute, the attorneys filed a joint motion to withdraw and a petition for intervention on June 10, 1993. The trial court deferred a hearing on these matters until the day the trial was set to begin.
On July 1, 1993, plaintiffs attorneys filed a motion to continue the trial. The trial court held a hearing and ultimately granted the motion to withdraw and allowed the attorneys to intervene. The trial court denied the motion to continue and the trial of this matter began, with the plaintiff representing himself.
At the conclusion of the plaintiffs case, all of the defendants filed a motion for involuntary dismissal. The trial court granted only Marmac’s motion. At the end of the trial, the trial court found that plaintiff failed to prove that he had been exposed to toxic or hazardous materials. The trial court further held that if he had been so exposed, he had not sustained any damages. Judgment was rendered in favor of the defendants.
Plaintiff, in proper person, filed a motion for new trial alleging several trial court errors, including the denial of the motion for a continuance. The motion for new trial was denied by the trial court.
Plaintiff now appeals, alleging the following assignments of error for our review:
1.
The trial court erred in denying appellant Rainone’s motion for a continuance.
2.
The trial court erred in granting defendant Marmac’s (McDonough Marine Services) motion for an involuntary dismissal.
3.
The trial court erred in dismissing Rai-none’s claims with prejudice.

Jé-

The trial court erred in not awarding Rai-none punitive damages pursuant to the provisions of Louisiana Civil Code Article 2315.3.
5.
The trial court erred in not granting Rai-none’s motion for a new trial.

ASSIGNMENT OF ERROR NUMBER ONE

Through this assignment of error, plaintiff contends that the trial court erred in not granting his motion for a continuance and urges that the case be remanded for a new trial.
LSA-C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. Under this article, a continuance rests within the sound discretion of the trial court. Premier Bank, National Association v. Robinson, 618 So.2d 1037, 1039 (La.App. 1st Cir.1993); Sparacello v. Andrews, 501 So.2d 269, 273 (La.App. 1st *710 Cir.1986), writ denied, 502 So.2d 103 (La.1987). A trial judge must look to the facts of each case when a motion to continue is requested. Among the factors a trial judge considers before granting a continuance are diligence, good faith and reasonable grounds. Premier Bank, National Association v. Robinson, 618 So.2d at 1039. Weighed against the possibility of injustice, unfairness and inequity, which might result from a premature trial, is the effect that a continuance might have on the administration of justice, including congested court dockets, and just as important, a defendant’s corollary right to have serious charges against him judicially resolved within a reasonable time. Sparacello v. Andrews, 501 So.2d at 273-74.
A district court has wide discretion in fixing cases for trial and the granting or denying of continuances, but when such discretion is exercised in a way that deprives a litigant of his day in court, there is an “abuse of discretion”. Marpco, Inc. v. South States Pipe & Supply, 377 So.2d 525, 528 (La.App. 3rd Cir.1979); Halley v. Halley, 457 So.2d 108, 109 (La.App. 2nd Cir.), writ denied, 461 So.2d 316 (La.1984).
On the day this trial was scheduled to begin, the trial court conducted a hearing on the motion to withdraw and the petition for Isintervention. Additionally, a motion for continuance was filed on this date by DeSonier and Robin.
The evidence presented at this hearing established that a dispute arose between plaintiff and his attorneys on or about June 1, 1993. In the petition for intervention, DeSonier and Robin alleged that they had been discharged by the plaintiff.
Plaintiff was the only party involved in the dispute to testify at the hearing. The record reflects that plaintiff was told by the trial court, at the beginning of the presentation of evidence, that it could not continue his case. The trial court also told plaintiff that because Mr. Koeppel had not enrolled in his case, plaintiffs choice was to proceed with DeSonier and Robin or try the case himself.
Plaintiff testified that he had not fired his attorneys, but had been told by DeSonier on June 1 that they would withdraw because he refused to sign an authorization to settle the case. The authorization to settle, which was dated June 1, 1993, was introduced into evidence at the hearing. Plaintiff also told the trial court that he believed that he was to have a jury trial but he discovered June 1 or June 2 that he was to have a bench trial instead. Plaintiff stated that he began to look for another attorney at that point.
DeSonier and Robin never rebutted plaintiffs allegation that they would withdraw from the case if he did not sign the authorization to settle. Instead, DeSonier and Robin presented evidence which indicated that on June 1 or 2, 1993, plaintiff had called the offices of DeSonier and Robin to inform them that he no longer required their services. Additionally, both DeSonier and Robin wrote to plaintiff, clarifying that plaintiff no longer desired their representation. These letters directed plaintiff to contact their respective offices if this was incorrect. Plaintiff maintained that these telephone calls and letters occurred after the attorneys had stated that they would withdraw from the case.
DeSonier’s secretary testified that Rainone met with DeSonier at his office on June 1, 1993, but denied that DeSonier came out of | gh-is office during the meeting and asked her to file a motion to withdraw.
Additionally, DeSonier introduced a letter sent to him by plaintiff on June 15, 1993, requesting that he forward his files and the contract of representation to Peter Koeppel, an attorney.[3]
At the conclusion of the hearing, the trial court stated that on June 10, 1993, it conducted a telephone conference with counsel for all parties. During this conference, the trial court informed counsel that it would not act on the motion to withdraw or the petition for intervention until the day the trial began. At the hearing, the trial court stated:
One of the reasons I took that position is that I wanted to be absolutely certain that Mr. Rainone knew the consequences of a *711 withdrawal or changing attorneys at this point and I needed to be sure he understood that I was not inclined to continue the case and that either he would proceed with counsel or without counsel.
The trial court stated that on June 17, 1993, it conducted another telephone conference at the behest of Mr. Koeppel. According to the trial court, Mr. Koeppel suggested that this case be transferred to St. Mary Parish, where a case arising out of the same set of facts was set to be tried. The trial court stated that it told Mr. Koeppel that it was not inclined to grant such a transfer at this stage of the proceedings and then asked Mr. Koeppel if he planned to enroll as counsel of record. Mr. Koeppel told the trial court that if this case were not transferred or continued, he could not represent plaintiff because he was going to be out of the country during the month of July.
The trial court noted that he told Mr. Koeppel to explain to plaintiff that he should go forward with Mr. Robin because he could not come into the case. The trial court further noted that he had sent word to Robin that as long as he and DeSonier were enrolled in this case, they were to take whatever steps were necessary to prepare the case for trial and to protect plaintiffs interest.
The trial court also stated that it asked Mr. Koeppel to ^stress to plaintiff that they would go forward with his trial whether or not he had an attorney and that he needed an attorney to adequately present his case.
At the conclusion of the hearing, the trial court found that plaintiff had discharged De-Sonier and Robin and granted the motion to withdraw and allowed them to intervene in the suit. In denying the motion for continuance, the trial court noted that it would be “grossly unfair” to the defendants and to the hundreds of people who had cases pending and who needed a trial date. The trial court found that the dispute between plaintiff and his attorneys was twofold — plaintiff did not want to grant counsel authorization to settle and plaintiff was unhappy with the fact that he was not going to have a jury trial. The trial court determined that the dispute between plaintiff and his attorneys was not the kind of dispute which justified continuing a trial.
Because the discharge of one’s lawyer is not, by itself, grounds for the postponing of another party’s access to the courts for a decision in a pending action, the client bears the burden of showing other circumstances that would justify a continuance. Sands v. State, Through Louisiana State Medical Center, School of Dentistry, 458 So.2d 960, 961 (La.App. 4th Cir.), writ denied, 460 So.2d 1044 (La.1984). For example, a reasonably diligent client’s having fired his lawyer for unpreparedness could be “good” grounds for a continuance in the absence of counterbalancing circumstances. Sands v. State, Through Louisiana State Medical Center, School of Dentistry, 458 So.2d at 961.
The trial court’s conclusion that plaintiff discharged his attorneys is not wholly supported by the record. Plaintiff alleged at the hearing that he had not fired his attorneys, but had been told by DeSonier that they would withdraw because he refused to sign the authorization to settle. This allegation was uneontroverted.
Even if plaintiff did discharge his attorneys, he has established circumstances which justify a continuance. Besides the un-controverted testimony of plaintiff about his refusal to sign the ^authorization to settle, plaintiff complained of the loss of a jury trial. The record reflects that no jury bond was posted and that DeSonier and Robin filed a waiver of a jury trial on May 27, 1993. A waiver of one’s right to a jury trial may not bind plaintiff, even if it is signed by plaintiffs attorney, if plaintiff did not authorize the waiver. See, Revel v. Telecheck Louisiana, 581 So.2d 405 (La.App. 4th Cir.), writ denied, 588 So.2d 1116 (La.1991).
The record further reflects that the trial court repeatedly stated that it would not grant a continuance in the case before the presentation of any evidence on the merits of the attorneys’ joint motion to withdraw or the motion for a continuance.
In denying plaintiffs motion for a continuance, the trial court effectively denied plaintiff his day in court. Unrepresented by *712 counsel, plaintiff was not able to properly present his case. Under these circumstances, we hold that the trial court in the present case abused its discretion in denying the continuance.

ASSIGNMENTS OF ERROR NUMBERS TWO THROUGH FIVE

Because of our holding in Assignment of Error Number One, a discussion of the issues presented in the remaining assignments of error is unnecessary.

CONCLUSION

Accordingly, the judgment of the trial court is reversed and set aside and this matter is remanded to the trial court for a new trial. All costs of this appeal are to be assessed equally among the defendants, Exxon, Marmac and United Tugs, Inc.
REVERSED AND REMANDED.

. The original petition named McDonough Marine Service as a defendant. The petition was subsequently supplemented and amended to reflect that the correct defendant was Marmac Corporation, d/b/a McDonald .Marine Services.

. The Orgeron matter was settled and a judgment of dismissal was signed on December 18, 1992.

. On June 18, 1993, DeSonier and Robin filed a motion and order to transfer and substitute counsel of record, apparently in response to this letter. This motion was denied by the trial court.