951 So.2d 274 (2006)
Thomas R. DENTON
v.
Pamela A. VIDRINE, American Deposit Insurance Company, La Sheriffs' Automobile Risk Program, and State Farm Mutual Automobile Insurance Company.
Pamela Vidrine
v.
Thomas R. Denton, Randall Andre in his Capacity as Sheriff for the Parish of West Baton RougeWest Baton Rouge Parish Sheriff's Office, Louisiana Sheriffs' Automobile Risk Program and XYZ Insurance Company.
Nos. 2006 CA 0141, 2006 CA 0142.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*277 Lewis O. Unglesby, Robert M. Marionneaux, Harry L. Shoemaker, III, John P. Calmes, Jr., Baton Rouge, for Plaintiff-Appellee Thomas R. Denton.
Ronnie J. Berthelot, Carlos Romanach, E. Wade Shows, Baton Rouge, for Defendant-Appellant State of Louisiana Through the Department of Transportation and Development (DOTD).
Suzanne Willoughby Miller, Terry J. Butcher, Baton Rouge, for Defendants-Appellees State Farm Mutual Automobile *278 Insurance Company and Pamela A. Vidrine.
Burt K. Carnahan, New Orleans, for Defendant-Appellee State Farm Mutual Automobile Insurance Company.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
PETTIGREW, J.
These consolidated cases, involving claims for damages resulting from personal injuries, arise out of the same vehicular collision. Following a lengthy trial, the jury returned a verdict in favor of the plaintiff, awarding damages totaling $5,285,908.00. The instant appeal followed. For the reasons set forth below, we affirm.

FACTS
On January 12, 1995, Thomas R. Denton, a reserve deputy with the West Baton Rouge Parish Sheriffs Office, was operating a 1991 Chevrolet Camaro owned by the sheriff's office. While traveling in a northerly direction on S. Winterville Street, Mr. Denton attempted to turn left and proceed westbound on U.S. Highway 190 ("Hwy.190").[1] At approximately the same time, Pamela A. Vidrine was operating her 1985 Toyota Tercel in an easterly direction on Hwy. 190 in the inside lane of travel alongside a pickup truck. As Mrs. Vidrine approached the intersection of Hwy. 190 and Winterville Street, she noticed Mr. Denton's vehicle in front of her. She applied her brakes, ultimately colliding with Mr. Denton's vehicle. As a result of this accident, both Mr. Denton and Mrs. Vidrine sustained injuries.

PROCEDURAL HISTORY
Following this accident, two separate lawsuits were filed and later consolidated. In the Vidrine suit, Mrs. Vidrine named Mr. Denton, Randall Andre, in his capacity as Sheriff for the Parish of West Baton Rouge, the Louisiana Sheriffs' Automobile Risk Program ("LSARP"), and an unnamed insurance company as defendants. Mrs. Vidrine subsequently filed a motion to dismiss her suit with prejudice. Thus, there are no issues pertaining to Mrs. Vidrine's claims at issue in the instant appeal.
In the Denton suit, Mr. Denton initially filed a petition for damages on November 25, 1995, against Mrs. Vidrine, her insurer, American Deposit Insurance Company ("American Deposit"), LSARP, and his own uninsured/underinsured insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm"). On February 20, 1997, Mr. Denton filed a motion to dismiss his claims against Mrs. Vidrine and her insurer with prejudice. The trial court signed the motion on February 21, 1997.
Subsequently, on April 21, 1997, Mr. Denton filed a first supplemental and amending petition against LSARP and State Farm adding a request for penalties and attorney fees pursuant to La. R.S. 22:658. On February 27, 1998, Mr. Denton filed a second supplemental and amending petition adding the State of Louisiana, through the Department of Transportation and Development ("DOTD") as a defendant. DOTD answered the petition asserting, among other affirmative defenses, that Mr. Denton's petition was prescribed.
An exception raising the objection of prescription was later filed by DOTD on *279 October 18, 2004, the first day of the trial of this matter, and heard by the trial court that same day. Following argument by the parties, the trial court denied the exception, citing this court's previous decision in Doyle v. Mitsubishi Motor Sales of America, Inc., 99-0459, 99-0460 (La.App. 1 Cir. 3/31/00), 764 So.2d 1041, writ denied, XXXX-XXXX (La.6/16/00), 765 So.2d 338; the trial proceeded through October 22, 2004.
After hearing extensive evidence, the jury returned a verdict in favor of Mr. Denton, assigning 52 percent of the fault to DOTD, 44 percent of the fault to Mrs. Vidrine, and 4 percent of the fault to Mr. Denton and awarding damages totaling $5,285,908.00 to Mr. Denton as follows: $90,000.00 (Past Medical Expenses); $167,043.00 (Future Medical Expenses); $1,907,068.00 (Future Life Care Expenses); $321,666.00 (Past, Present & Future Mental Pain and Suffering); $321,667.00 (Past, Present & Future Physical Pain and Suffering); $723,315.00 (Past Loss Wages); $1,433,482.00 (Future Lost Wages); and $321,667.00 (Loss of Enjoyment of Life). The jury further found that State Farm's failure to make an unconditional payment on Mr. Denton's claim had been neither arbitrary nor capricious. A final judgment in accordance with the jury's findings was signed by the trial court on November 3, 2004. Said judgment further provided as follows:
IT IS FURTHERED (sic) ORDERED, ADJUDGED AND DECREED that the award for general damages as to the State of Louisiana are reduced to a combined $500,000.00 because of the statutory cap as to suits against the State of Louisiana.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Louisiana is cast for 52% of the aforementioned amount plus judicial interest on those sums from the date of judicial demand and its share of court costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that State Farm Automobile Automobile (sic) Insurance Company as the uninsured/underinsured motorist carrier of the Thomas R. Denton Vehicle owes its policy limit of $50,000.00 plus court cost and interest from the date of judicial demand until paid.
Court Costs to be determined at a hearing in accordance with law as provided for by La. C.C.P. Article 1920.[2]
DOTD subsequently filed a motion for judgment notwithstanding the verdict on November 10, 2004, which the trial court summarily denied on December 9, 2004. This appeal by DOTD followed.[3]

ASSIGNMENTS OF ERROR
1. The Trial Court erred in denying DOTD's Peremptory Exception Raising the Objection of Prescription.
2. The Jury Verdict and the Trial Court's Final Judgment incorporating the Jury Verdict were manifestly erroneous in finding DOTD liable for the *280 damages suffered by Thomas R. Denton because U.S. 190 did not present an unreasonable risk of harm to Thomas R. Denton and, even [if] U.S. 190 was unreasonably dangerous, the condition of U.S. 190 was not a cause-in-fact of the motor vehicle accident on January 12, 2005 and Thomas R. Denton's subsequent injuries.
3. The Jury Verdict and the Trial Court's Final Judgment incorporating the Jury Verdict were manifestly erroneous in assessing DOTD with 52% fault, Pamela Vidrine with liability and 44% fault, and Thomas R. Denton with only 4% fault because the cause-in-fact of the injuries to Thomas R. Denton was the grossly negligent conduct of Thomas R. Denton.
4. The Jury Verdict and the Trial Court's Final Judgment incorporating the Jury Verdict were manifestly erroneous in awarding $5,285,908 in total damages to Thomas R. Denton because the evidence did not establish that Thomas R. Denton suffered a stroke as a result of the January 12, 1995 motor vehicle accident.
5. The Trial Court erred in denying DOTD's request to have a special jury interrogatory on the issue of whether the January 12, 1995 motor vehicle accident had caused Thomas R. Denton's March 12, 1995 stroke.
6. The Trial Court erred in denying DOTD's motion for continuance following the belated disclosure by the Plaintiff, Thomas R. Denton, that he would call Dr. Michael Puyau as a medical expert to link the motor vehicle accident to the stroke.
7. The Trial Court erred in overruling DOTD's objection that the testimony of Dr. Michael Puyau constituted an expansion of the pleadings.
8. The Trial Court erred in denying DOTD's Motion in Limine To Exclude the Testimony of Sheriff Mike Cazes, to Compel and Continue because DOTD was precluded from discovering whether the personnel record of Thomas R. Denton during his tenure as a volunteer Sheriffs Deputy contained any information about how Thomas R. Denton described the accident to his superior, the Sheriff of West Baton Rouge.
9. The Trial Court erred in denying DOTD's Daubert motion against Dr. Michael Payou (sic) because Dr. Payou (sic) testified that he did not rely upon any recognized methodology in linking the January 12, 1995 motor vehicle accident to the stroke Thomas R. Denton suffered on March 12, 1995.
10. The Trial Court erred in denying DOTD's motions for mistrial and for failing to adequately instruct the jurors when, during closing arguments, Plaintiff's counsel inflamed the jury by telling them that that DOTD would win if Vidrine was not found liable or if DOTD was found 100% at fault.
11. The Trial Court erred in taxing costs against DOTD because the gross negligence of Thomas R. Denton was the cause-in-fact of his January 12, 1995 motor vehicle accident.

PRESCRIPTION

(Assignment of Error No. 1)
The prescriptive period applicable in the case sub judice is the one-year liberative prescription for delictual actions, commencing the day the injury or damage is sustained. La. Civ.Code art. 3492. This statute, like all prescription statutes, is strictly construed against prescription and in favor of maintaining the cause of action. Babineaux v. State ex rel. Dept. of Transp. and Development, 2004-2649, p. 4 (La. *281 App. 1 Cir. 12/22/05), 927 So.2d 1121, 1124. Prescription statutes are intended to protect defendants against stale claims and the lack of notification of a formal claim within the prescriptive period. Ordinarily, the burden of proof is on the party pleading prescription. However, if on the face of the petition it appears prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. In re Brewer, XXXX-XXXX, p. 4 (La.App. 1 Cir. 5/5/06), 934 So.2d 823, 826, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1278. In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true.[4]Our Lady of the Lake Hosp. v. Vanner, 95-0754, p. 3 (La.App. 1 Cir. 12/15/95), 669 So.2d 463, 464, cert denied, 525 U.S. 818, 119 S.Ct. 57, 142 L.Ed.2d 45 (1998).
On appeal, DOTD argues that because Mr. Denton's suit was prescribed on its face, Mr. Denton was required to establish joint or solidary liability between DOTD and any remaining defendant in order for his claim against DOTD to remain viable. Moreover, DOTD contends that once Mr. Denton dismissed Mrs. Vidrine and American Deposit from the suit, any solidarity that may have existed between them and DOTD ceased and, consequently, any interruption of prescription occasioned by Mr. Denton's timely filed suit against Mrs. Vidrine and American Deposit ceased also. DOTD maintains the trial court erred in relying on Doyle, noting in brief as follows:
Unlike the plaintiffs in Doyle, Denton amended his suit to add DOTD as a defendant more than a year after the sole joint tortfeasor and her insurer, Vidrine and American Deposit, had been dismissed with prejudice. Their dismissal resulted in the termination of any interruption of prescription based upon a timely filed suit against a joint tortfeasor and her insurer. La. C.C. art. 3463. And, thus, Denton's suit against DOTD filed over a year after Vidrine was dismissed was not timely filed. Therefore, the Trial Court's reliance upon Doyle and denial of DOTD's peremptory exception raising the objection of prescription were erroneous.
To the contrary, Mr. Denton cites Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La.1982), as support for his position that an uninsured motorist carrier is a solidary obligor with the tortfeasor. Mr. Denton notes further, "[t]hus, State Farm, as a UM carrier, is a solidary obligor, who was not dismissed at the time DOTD was added as a defendant, and is an obligor solidarily liable with DOTD."
We agree with Mr. Denton that Hoefly is controlling on the issue of the solidarity of the tortfeasor and the uninsured motorist carrier. In Hoefly, the Louisiana Supreme Court stated:
The question presented by this case is whether an automobile accident victim's uninsured motorist carrier is solidarily obliged with the tortfeasor so that the victim's timely suit against the latter interrupts prescription with regard to the insurer. The court of appeal affirmed the trial court's judgment sustaining the insurer's plea of prescription, holding that the plaintiffs' timely suit against two tortfeasors, one uninsured *282 and another underinsured, failed to interrupt prescription because the uninsured motorist insurer and the tortfeasors were not solidary obligors. We reverse. An obligation is solidary among debtors when they are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor. When these characteristics result from provisions of law, as in the case of the obligation of the tortfeasor and uninsured motorist carrier, an obligation in solido exists without requiring an express declaration. Consequently, the plaintiffs timely and properly filed suit against the tortfeasors interrupted prescription as to his uninsured motorist carrier.
Hoefly, 418 So.2d at 576.
With regard to the trial court's reliance on Doyle in denying the exception raising the objection of prescription, Mr. Denton argues that Doyle stands for the proposition that the interruption of prescription resulting from the proper filing of a suit continues as long as the suit is pending and is only lost when the plaintiff voluntarily dismisses the suit prior to trial. Thus, Mr. Denton maintains, because his suit was still pending at the time DOTD was added as a defendant, the filing of his suit against the original defendants interrupted prescription as to DOTD and that interruption was not lost when he dismissed Mrs. Vidrine and American Deposit as defendants. We agree.
In Doyle, the plaintiffs timely filed suit against a car manufacturer and the driver of another vehicle after their relatives were killed in a car accident. The plaintiffs filed a supplemental petition adding DOTD as a defendant four years after the accident. Later, the plaintiffs settled with the original defendants, who were dismissed from the suit. DOTD then filed an exception raising the objection of prescription, alleging the voluntary dismissal of the original defendants meant the supplemental petition could no longer relate back to the original petition for purposes of prescription. DOTD argued that it was a wholly new defendant and that the claims made against it were based on facts entirely different from those alleged in the original, timely filed petition. The trial court overruled DOTD's exception. Doyle, 99-0459 at 2-5, 764 So.2d at 1042-1044
This court denied writs on the issue, citing La. Civ.Code art. 2324(C)[5] and noting that "interruption was not lost by plaintiffs' dismissal of the three original defendants." Doyle, 99-0459 at 7, 764 So.2d at 1045. This court further cautioned that "dismissal of a particular defendant is not the same as the dismissal of the lawsuit." Id. (citing Miller v. One Shell Square, 619 So.2d 1096, 1097-1098 (La.App. 4 Cir.1993)). Moreover, we concluded that because both "[t]he original and amending petitions involve the same accident, and both assert the defendants are at fault in causing that accident," suit timely filed against the defendants in the original petition served to interrupt prescription against DOTD. Doyle, 99-0459 at 6, 764 So.2d at 1045.
Similarly, in the matter before us, both the original and amending petitions involve the same accident and assert that the named defendants were jointly at fault in causing the accident. Accordingly, pursuant to Article 2324(C) and our previous holding in Doyle, we find that the timely filed petition against the original defendants *283 served to interrupt prescription on the claims asserted against DOTD. This assignment of error is without merit.

ALLOCATION OF FAULT

(Assignments of Error Nos. 2 and 3)
In its brief to this court, DOTD asserts that because the original plans for Hwy. 190 were dated 1931, a time when there were no state or federal standards for design of highways, the standards to be followed for the construction for Hwy. 190 were those set out in the plans. DOTD maintains that it discharged its duty to the motoring public and further that the mere fact that an accident occurred does not render it liable to Mr. Denton. Citing La. R.S. 32:234, DOTD argues that "the presence of the flashing red light and stop sign which faced Denton and the flashing amber light which faced Vidrine (1) directed Denton to stop and to proceed from the stop sign only after he had ascertained that it was safe to do so and (2) warned Vidrine to drive with caution as she approached the intersection of U.S. 190 and S. Winterville."[6]
In response to DOTD's argument on this issue, Mr. Denton argues that when DOTD added two lanes of travel to Hwy. 190 in 1952, this was new construction that required DOTD to follow the standards in place at the time. Moreover, Mr. Denton cites to Hunter v. Department of Transp. and Development of State of La., 620 So.2d 1149 (1993), for the proposition that the section of Hwy. 190 at issue in this case was previously held by the Louisiana Supreme Court to be unreasonably dangerous to left-turning motorists. Thus, Mr. Denton contends, the jury's finding with regard to the allocation of fault is not manifestly erroneous and should be upheld on appeal.
In Adams v. Parish of East Baton Rouge, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, p. 23 (La.App. 1 Cir. 11/14/01), 804 So.2d 679, 698, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 1090, this court addressed the great discretion afforded to the trier of fact in its allocation of fault.
It is well settled that the allocation of fault is a factual matter within the sound discretion of the trier of fact and will not be disturbed on appeal in the absence of manifest error. If an appellate court finds a clearly wrong apportionment of fault, it should adjust the award, but then only to the extent of lowering or raising it to the highest or lowest point respectively that is reasonably within the trial court's discretion. However, when there is evidence before the trial court that, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court should not disturb this finding absent manifest error. [Citations omitted.]
The seminal case on the apportionment of fault between parties is Watson v. State Farm Fire and Cas. Ins. Co., *284 469 So.2d 967 (La.1985). In Watson, the Louisiana Supreme Court identified various factors that may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actors, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974.
In the instant case, the jury determined that Mrs. Vidrine was 44 percent at fault, Mr. Denton was 4 percent at fault, and DOTD was 52 percent at fault. Applying the Watson factors set forth above, we have examined the jury's assessment of fault as against each of the parties. Based on the facts of this case, we do not find the jury's assessment of fault constituted manifest error. Considering the record in its entirety, we are satisfied that it reasonably supports the jury's conclusions. These assignments of error are without merit.

MOTION FOR CONTINUANCE

(Assignments of Error Nos. 6, 7, & 9)
A continuance rests within the sound discretion of the trial court, and may be granted under La.Code Civ. P. art. 1601 "if there is good ground therefor." The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance. The trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds, and may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. Absent a clear abuse of discretion in granting or denying a continuance, the ruling of the trial court should not be disturbed on appeal. Gilmore v. Wickes Lumber, 2004-2769, pp. 10-11 (La.App. 1 Cir. 2/17/06), 928 So.2d 668, 674.
According to the record, DOTD moved for a continuance on October 7, 2004, just eleven days before the trial of this matter was scheduled to begin. At the time of this request for continuance, counsel for DOTD argued to the trial court that it was not until Dr. Puyau's September 8, 2004 deposition that DOTD first learned that Mr. Denton intended to have a medical expert testifying at trial as to a connection between the accident in question and Mr. Denton's subsequent stroke. After hearing argument from the parties, the trial court denied the motion for continuance.
On appeal, DOTD challenges the trial court's denial of its motion for continuance, arguing (1) that Dr. Puyau was not qualified to render an expert opinion pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, (1993), and (2) that Dr. Puyau's testimony amounted to an expansion of the pleadings. We find no merit to these arguments.
Daubert Challenge
Article 702 of the Louisiana Code of Evidence provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Our supreme court has adopted the federal jurisprudential guidelines provided in Daubert to aid in interpreting Article 702 and to ensure that scientific and technical expert testimony meets minimal standards of reliability and relevance. See State v. Foret, 628 So.2d 1116, 1123 (La.1993).
*285 The Daubert guidelines require that expert opinions be grounded in approved methods and procedures of science, rather than just subjective belief or unsupported speculation. The trial court must also ensure that the scientific "evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 113 S.Ct. at 2795. Before the expert opinion can be admitted, the trial court must make "a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid" and of whether that reasoning or methodology properly can be applied to the facts at issue. Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796; Vardaman v. Baker Center, Inc., 96-2611, p. 6 n. 6 (La.App. 1 Cir. 3/13/98), 711 So.2d 727, 731 n. 6.
To fulfill the trial court's gatekeeper function for proposed expert evidence, various factors may be considered by the trial judge: (1) whether the technique has been subjected to peer review or publication, (2) the "known or potential rate of error," (3) a "reliability assessment," in which the "degree of acceptance" within a scientific community may be determined and reviewed, and (4) the "testability" of the technique. Franklin v. Franklin, XXXX-XXXX, p. 5 (La.App. 1 Cir. 12/22/05), 928 So.2d 90, 92, writ denied, XXXX-XXXX (La.2/17/06), 924 So.2d 1021.
It is well settled in Louisiana law that the admission of evidence, expert or otherwise, is subject to the trial court's discretion. Fussell v. Roadrunner Towing and Recovery, Inc., 99-0194, p. 3 (La.App. 1 Cir. 3/31/00), 765 So.2d 373, 375, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1042. When considering the Daubert challenge by DOTD to Dr. Puyau's testimony, the trial court noted as follows: "His testimony speaks for itself." After a review of the instant record utilizing the Daubert guidelines, and considering relevancy and possible prejudice, we find that the trial court did not abuse its broad discretion in allowing Dr. Puyau's expert testimony concerning the connection between the accident in question and Mr. Denton's stroke.
Expansion of Pleadings
It is well settled in Louisiana law that the trial court has much discretion under La.Code Civ. P. arts. 1151 and 1154 to allow a party to amend his pleadings. Moreover, the trial court has great discretion to admit or to disallow evidence, subject to an objection, based upon the scope of the issues and pleadings and to determine whether evidence is encompassed by the general issues raised in the pleadings. Muscarello v. Ayo, 93-2081, pp. 4-5 (La. App. 1 Cir. 10/7/94), 644 So.2d 846, 849. On appeal, this court will not disturb the orderly process of the trial court in this regard unless there is an abuse of discretion. Id.
Prior to the beginning of the instant trial, DOTD objected to "any attempts by Plaintiffs to expand the pleadings through the testimony of Dr. Puyau." When asked to explain the objection, counsel for DOTD noted:
[O]ur objection is that we maintain there is no connexity  no connection between the accident and the injuries suffered from the accident and the subsequent stroke suffered by Mr. Denton. Mr. Denton did not allege in his Petition against D.O.T.D. that he had suffered any stroke or brain damage as a result of the accident.
Counsel for DOTD added further:
We . . . don't think [Dr. Puyau's] qualified . . . we don't think . . . he can render an expert opinion in this case regarding the connection between the accident and Mr. Denton's subsequent stroke, and secondly, we maintain that *286 any evidence attempting to connect the accident to the stroke is an expansion of the pleadings.
In response to DOTD's objection, counsel for Mr. Denton argued as follows:
Judge, of course, you've already ruled on qualifications of . . . Dr. [Puyau] to render an opinion. Secondly, in the initial Petition for Damages, paragraph nine says . . . petitioner sues herein for all special and general damages . . . including but not limited to, damages, physical pain and suffering, permanent injury and disfigurement, loss of enjoyment of life, mental, emotional anxiety and stress, past and future medical expenses, loss wages, future loss wages, and/or impaired future earning capacity, and all other damages related to the injury Petitioner sustained in the accident on January 12, 1995. That's the opinion that Dr. Puyau rendered.
Dr. Puyau testified that immediately following the car accident, Mr. Denton had a 50 percent pneumothorax (collapse) of his left lung. According to Dr. Puyau, Mr. Denton complained of shortness of breath and pain on the left side of his chest for months after the accident and was seen in his office several times after his initial discharge. On March 9, 1995, Mr. Denton was readmitted to the hospital with left pleural effusion, a build-up of fluid around the lung, and dyspnea, shortness of breath. Dr. Puyau noted,
Basically, what happened to him on this second admission to the hospital, that I had put a chest tube in him to drain the fluid, and while he was in the hospital, he became septic, and  and went into  he developed what's called septic shock. It was about his third day. He crashed. He became  his blood pressure dropped almost to unrecordable levels, and as a result of that, he had a stroke.
We find no abuse of discretion by the trial court in allowing Dr. Puyau to testify. It is clear from a review of the record that Dr. Puyau's testimony describing Mr. Denton's injuries was not an expansion of the pleadings. Mr. Denton filed the instant suit seeking damages caused by the January 12, 1995 accident  damages that included the injuries described by Dr. Puyau concerning Mr. Denton's March 9, 1995 admittance to the hospital when he ultimately suffered a stroke.

JURY INTERROGATORY

(Assignment of Error No. 5)
In this assignment of error, DOTD contends it was prejudiced by the trial court's erroneous denial of its requested special jury interrogatory asking jurors whether the accident in question was the legal cause of the stroke Mr. Denton suffered in March 1995. We find no merit to this argument.
It is well settled in Louisiana law that the determination of whether to submit interrogatories on each factual issue is a matter within the trial court's broad discretion. Schram v. Chaisson, 2003-2307, p. 12 (La.App. 1 Cir. 9/17/04), 888 So.2d 247, 254. Absent an abuse of that discretion, appellate courts will not set aside such a determination. Id. After examining the record in this matter, we find no abuse of the trial court's broad discretion in not including DOTD's requested special jury interrogatory.

DAMAGES

(Assignment of Error No. 4)
DOTD argues on appeal that the evidence did not establish that Mr. Denton suffered a stroke as a result of the January 12, 1995 accident and, thus, the trial court's judgment incorporating the jury verdict awarding damages totaling *287 $5,285,908.00 was manifestly erroneous. Citing Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759, DOTD maintains that Mr. Denton failed to satisfy his burden of proving, through medical testimony, that it is more likely than not that his stroke was caused by the accident. DOTD contends the "abusively high amount of damages" awarded by the jury "could only be based on the jury conclusion that the stroke was caused by the motor vehicle accident, a finding the jury was required to make in the absence of the aforementioned DOTD's requested special interrogatory."
A plaintiff bears the burden of proving the causal connection between an accident and injury (damage) by a preponderance of the evidence. Haydel v. Hercules Transport, Inc., 94-1246, p. 23 (La. App. 1 Cir. 4/7/95), 654 So.2d 418, 432, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019. Causation is a question of fact and, thus, subject to the manifest error standard of review. Haydel, 94-1246 at 24, 654 So.2d at 432. In order to reverse a fact finder's determination of fact, an appellate court must find from the record that a reasonable factual basis does not exist for the finding and that the record establishes that the finding is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Based on our exhaustive review of the record before us, and mindful of the great deference we must afford the trier of fact, we find no manifest error in the jury's finding that Mr. Denton's injuries, including the stroke he suffered in March 1995, were caused by the January 12, 1995 accident.
With regard to the amount of damages awarded, we note (as did Mr. Denton in his appellate brief), that DOTD does not make any specific claim concerning the amount of general damages awarded to Mr. Denton. Nonetheless, we have reviewed the damage award and, based on our review of the extensive medical evidence in the record, we find no abuse of discretion by the jury in the damages awarded. Given the "particular injuries and their effects under the particular circumstances" on Mr. Denton, the jury's damage award is not beyond that which a reasonable trier of fact could assess. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

MOTION FOR MISTRIAL

(Assignment of Error No. 10)
DOTD argues the trial court erred in refusing to grant its motion for mistrial. DOTD further contends that an alleged improper statement by Mr. Denton's counsel during closing arguments inflamed the jury and that the trial court erred in not adequately instructing the jury to disregard the prejudicial remarks. We find no merit to these arguments.
Generally, mistrials are properly granted because of some fundamental failure in the proceeding. A motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity; and (2) where no other remedy would provide relief to the moving party. Barnes v. Thames, 578 So.2d 1155, 1161 (La.App. 1 Cir.), writs denied, 577 So.2d 1009 (La.1991). Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial that cannot be cured by admonition or instruction. Because a mistrial results in the discharge of one jury and the impaneling *288 of another to try the case anew, it is a drastic remedy. The trial judge is vested with broad discretion to grant a motion for mistrial where no other remedy would afford relief or where circumstances indicate that justice may not be done if the trial continues. This court should not disturb the trial court's determination unless there is an abuse of discretion. Hunter v. State ex rel. LSU Medical School, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/29/06), 934 So.2d 760, 763, writ denied, 940 So.2d 653, XXXX-XXXX (La.11/3/06).
During cross-examination of DOTD's expert, Dr. Joe Blaschke, counsel for Mr. Denton made the following statement:
In fact, sir, it's a fact, isn't it, that when you got here and you learned from [counsel for DOTD] that it's advantageous to the State for Pamela Vidrine not to be at fault because of legal circumstances that you've now decided that she couldn't see what was right In front of her?
DOTD and State Farm objected to the question and, outside of the presence of the jury, moved for a mistrial, arguing that the statement was highly prejudicial and absolutely improper. The trial court overruled the objection and denied the motion for mistrial, noting as follows:
What I'm about to say is not to suggest that this gentleman is telling anything other than the truth. But bias, prejudice, a reason, a motive for testifying consistent with any party is fair game. He has him under cross examination. And what he has testified to in other courts or in other situations, if it is relevant to this case, is information that can be elicited in front of the jury to show that he has changed his opinion for whatever reason or because of payment. It is classic cross examination.
As noted by the trial court, the aforementioned question was posed to attack the credibility of the witness. Thus, the trial court did not abuse its discretion in allowing this line of questioning to continue.
With regard to the alleged improper statement by Mr. Denton's counsel during closing arguments, the record reflects the following:
There are a few principles of law that you need to understand, though. And you may, for example, I would think, if I were a juror, I'd be curious as to why is the State working so hard and paying an expert to come here and try to exculpate Pamela Vidrine, who is insured with State Farm. I mean Pamela Vidrine is driving down the road straight ahead. If she's looking straight ahead, she is not supposed to run into things in front of her. That's not complicated. Under normal situations in the State's defenses, they would be blaming Pamela Vidrine. It helps them in this caseno fault on Pamela Vidrinedoesn't matter what else you do they win. That's why Mr. Blaschke, who has never testified in 65 cases on behalf of a motorist who runs into somebody all of a sudden has decided in this case to have a different opinion. That's why Mr. Berthelot, representing DOTD, has never said for a second that a lady driving the maximum speed into an amber light, on a highway that she's familiar with, who has decided to box herself in because she's interested in the truck next to her, has no fault. A hundred percent against the State and they will win this case and Thomas Denton will get nothing.
Counsel for DOTD objected, arguing, "That is beyond closing arguments, Your Honor, that is an instruction that the Court has to give. That is beyond closing arguments." Counsel for Mr. Denton noted *289 "It is the facts of the case and if you want to instruct on it, I don't mind." Counsel for DOTD countered, "We object to it because we think it has inflamed the Juryit has prejudiced the Jury, Your Honor." The trial court sustained the objection and allowed counsel for Mr. Denton to continue with his closing argument. We find no abuse of discretion by the trial court in this decision.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment below in all respects and assess appeal costs in the amount of $12,957.84 against the State of Louisiana, through the Department of Transportation and Development.
AFFIRMED.
NOTES
[1] According to the record, Hwy. 190 is a four-lane highway divided by a four-foot median. There are no turn lanes at the location in question.
[2] On November 3, 2004, Mr. Denton filed a motion to tax costs, the outcome of which is the subject of a separate appeal also decided this date. See Denton v. Vidrine, XXXX-XXXX, XXXX-XXXX (La.App. 1 Cir. 12/28/06), 2006 WL 3804621. In yet another appeal arising out of this case, Mr. Denton challenges the trial court's denial of his "Motion To Introduce Additional Evidence And To Fix Interest." See Denton v. Vidrine, XXXX-XXXX, XXXX-XXXX (La.App. 1 Cir. 12/28/06), 2006 WL 3813736.
[3] Pursuant to Uniform RulesCourts of Appeal, Rule 2-12.4, this court may consider abandoned any specification of error that is not briefed by a party. Accordingly, we will not address herein DOTD's assignments of error nos. 8 and 11.
[4] In the instant case, the record indicates that counsel for Mr. Denton, over the objection of counsel for DOTD, introduced the depositions of Mrs. Vidrine and James Clary in support of their defense of the objection of prescription. However, this court has been unable to locate said depositions in this voluminous record. This evidence notwithstanding, the allegations contained in the petitions, which must be accepted as true for purposes of the prescription exception, are sufficient for this court to determine the issues before us.
[5] Article 2324(C) provides that interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
[6] The duties of a motorist faced with a flashing signal are outlined in La. R.S. 32:234(A) as follows:

A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED (STOP SIGNAL)When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL)When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.