ALVIN J. WADE
v.
MARINE SERVICES OF ACADIANA LLC AND CAL DIVE INTERNATIONAL INC
No. 2008 CA 2144
Court of Appeals of Louisiana, First Circuit.
August 6, 2009
Not Designated for Publication
ALVIN J WADE, Plaintiff Appellant In Proper Person
TODD G CRAWFORD, Balch Bingham LLP Attorney for Defendants Appellees Marine Services of Acadiana LLC and Cal Dive International Inc
DENISE A VINET, Intervenor In Proper Person.
Before PARRO McCLENDON and WELCH, JJ.
PARRO J
Alvin J. Wade appeals a judgment denying his motion to declare a power of attorney invalid; granting a motion to enforce settlement filed by Marine Services of Acadiana, LLC (Marine Services) and Cal-Dive International, Inc. (Cal-Dive); ordering him to execute a receipt, release, indemnity, and hold harmless agreement; and ordering Marine Services to place settlement funds of $25,000 into the registry of the court. Based on the record before us, we affirm the judgment.

BACKGROUND
On July 25, 2006, while employed by Marine Services as a kitchen helper on a barge owned or operated by Cal-Dive, Wade allegedly slipped on ice in the freezer and fell, breaking his nose and straining his neck. In December 2006, he filed suit against Marine Services and Cal-Dive, seeking damages under the Jones Act and general maritime law for the injuries he had sustained. The defendants filed a general denial, and eventually, the case was scheduled for mediation on September 26, 2007. The defendants also filed a motion for Wade's deposition, to take place the same day in the event the mediation did not result in a settlement of the lawsuit.
Wade did not appear at the mediation, because he was incarcerated in the Ouachita Parish Correctional Center in Monroe, Louisiana. However, his attorney, Denise A. Vinet, appeared and presented a power of attorney dated August 13, 2007, which was signed by Wade and authorized his brother, Cecil Wade, to act on his behalf in negotiating and settling any and all claims he had against the defendants. Cecil took part in several hours of negotiations, after which the parties agreed to settle the lawsuit. A "Mediation Settlement Agreement" was executed by the parties, with Cecil signing on behalf of his brother. The settlement called for the defendants to pay Wade $25,000 and to set aside sufficient funds for nasal reconstruction surgery, on the condition that the surgery be completed within six months. It further stated that if Wade was "unable or unwilling to have the nose surgery proposed by Dr. Danna within 6 months, the funds revert to [Marine Services]."
The defendants sent the settlement funds and a receipt and release document to Vinet; she forwarded the document to Wade to be signed. However, he refused to execute it. Vinet then filed a motion to withdraw as his attorney and a petition of intervention for her attorney fees and expenses. Marine Services and Cal-Dive filed a motion to enforce the settlement agreement, which Wade opposed, and Wade filed a motion to declare the power of attorney invalid. The motions were set for hearing, and Wade filed motions to have several persons, including his brother, subpoenaed as witnesses.
At the hearing on February 6, 2008, Wade appeared, representing himself. The court denied Wade's subpoena requests, because the witnesses resided in other states and were beyond the court's subpoena power.[1] Wade then asked for a continuance, so he could get his key witness and an attorney to represent him. Although the court did not formally deny the request for a continuance, the hearing was commenced. The defendants submitted into evidence the August 13, 2007 power of attorney, the September 26, 2007 Mediation Settlement Agreement, the notice of Wade's deposition, the notice of mediation, the letter to Vinet with settlement funds and the receipt and release document, Vinet's letter advising of her withdrawal and Wade's revocation of the power of attorney, the "Revocation of Power of Attorney" executed by Wade on November 21, 2007, and Wade's June 6, 2007 letter to Vinet in which he stated he was giving power of attorney to his brother, Cecil, to handle the litigation for him. Wade was called as a witness and identified his signature on the power of attorney and the revocation of the power of attorney. Vinet identified other documents and testified concerning the circumstances surrounding the power of attorney, the mediation, Wade's refusal to execute the receipt and release document, and her withdrawal as his counsel.
Wade's attempt to represent himself was totally ineffectual; he wanted to read some statements and questions that had been prepared for him before the hearing, which he referred to as his "guidelines." Whenever he had the opportunity to speak, his incoherence and unfamiliarity with the proceedings rendered his efforts futile. Eventually, the court orally granted the defendants' motion to enforce the settlement agreement.[2] On March 4, 2008, Wade filed a "Motion and Order to Hold in Abeyance," seeking a new hearing on the motions; this was denied by the court.[3] A judgment denying his motion to invalidate the power of attorney, granting the motion to enforce the settlement, and setting time limits for the execution of documents and payment of the settlement funds was signed March 7, 2008.[4]
In this appeal. Wade contends the trial court erred in enforcing the settlement for several reasons. First, he claims the power of attorney was not valid, because (1) it was not executed by him or his brother in the presence of the notary, Vinet; (2) it was not notarized in Ouachita Parish, as it stated; and (3) Vinet did not affix her seal or bar roll number to the document. Second, he claims that the mediation settlement agreement was executed through fraud, duress, and error, because Cecil was misled and coerced into signing it by Vinet and the defendants. Third, he alleges that the agreement contained an impossible condition-that he obtain the surgery on his nose from Dr. Danna within six months-which he could not fulfill, because he was incarcerated and would not be released in time to have that surgery done. Finally, he argues that the court abused its discretion in waiting until the morning of the hearing to advise him that his subpoenas would not be issued, in denying his request for a continuance, and in not allowing him to present his case.

APPLICABLE LAW AND ANALYSIS

Validity of Power of Attorney/Mandate
Wade argues that the power of attorney is not valid, because it misstates the circumstances under which it was executed and was not properly signed by the notary. Vinet identified a letter in which Wade told her he wanted his brother, Cecil, to handle the litigation for him, because it was difficult for him to do so from prison. She testified that she prepared the power of attorney form and sent it to Wade, who signed it in prison. It was then sent to Cecil, who signed it in Florida, and she signed as notary in her office in Baton Rouge. The document does not include her notary seal or her bar roll number. Wade contends that the power of attorney is not valid, because the form incorrectly states that it was signed in Ouachita Parish in the presence of the notary and two witnesses. He also claims Vinet was required to affix her seal and bar roll or notary number in order for the document to be valid.
The power of attorney at issue, being a contract of mandate, is governed by the provisions of the Louisiana Civil Code, articles 2989-3032. In re Succession of Aucoin, 99-2171 (La. App. 1st Cir. 11/8/00), 771 So.2d 286, 288. A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. LSA-C.C. art. 2989. The contract of mandate is not required to be in any particular form, unless the law prescribes a certain form for an act, in which case, a mandate authorizing the act must be in that form. See LSA-C.C. art. 2993. Express authority is required in order to enter into a compromise or settlement. See LSA-C.C. art. 2997(5).
Under these provisions, it is clear that a power of attorney does not have to be in any particular form in order to be effective, unless it grants authority to do an act for which a particular form is required. No particular form is required for a written settlement agreement. See LSA-C.C. art. 3072. In this case, the power of attorney expressly grants Cecil authority to "compromise, settle and adjust, with each and every person or persons, all actions, accounts, dues and demands, subsisting or to subsist between him [Wade] and them ... in such manner as his said attorney-in-fact shall think proper." Therefore, the requirement of Article 2997(5) was met. Wade admitted he signed the document and intended to give Cecil full authority to act for him. Therefore, we find that the power of attorney is valid, and the trial court did not err in denying Wade's motion to invalidate it.

Validity of Compromise or Settlement
Wade claims that Cecil was misled and coerced by Vinet and the defendants into signing the mediation settlement agreement. Therefore, he contends it is invalid, because consent was obtained through fraud, duress, and error. He also contends that the mediation settlement agreement contained an impossible condition-that he obtain the surgery on his nose from Dr. Danna within six months-which he could not fulfill, because he was incarcerated and would not be released in time to have that surgery done.
A compromise (or settlement) is a contract in which the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. See LSA-C.C. art. 3071. It must be in writing or recited in open court. See LSA-C.C. art. 3072. A settlement agreement is the law between the parties and must be interpreted according to their intent. Smith v. Walker, 96-2813 (La. App. 1st Cir. 2/20/98), 708 So.2d 797, 802, writ denied, 98-0757 (La. 5/1/98), 718 So.2d 418. The compromise instrument is governed by the same general rules of construction applicable to contracts. Orteqo v. State. Dep't of Transp. and Dev., 96-1322 (La. 2/25/97), 689 So.2d 1358, 1363. Accordingly, when the words of the settlement agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. See LSA-C.C. art. 2046; White v. General Motors Corp., 02-0771 (La. App. 1st Cir. 12/20/02), 835 So.2d 892, 903. However, when a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used. Halphen v. Bona, 06-1465 (La. App. 1st Cir. 5/4/07), 961 So.2d 1201, 1205, writ denied, 07-1198 (La. 9/21/07), 964 So.2d 338.
Consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. LSA-C.C. art. 1955. In pleading fraud or mistake (error), the circumstances constituting fraud or mistake must be alleged with particularity. See LSA-C.C.P. art. 856. However, fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. art. 1957; Valleio Enterprise, L.L.C. v. Boulder Image. Inc., 05-2649 (La. App. 1st Cir. 11/3/06), 950 So.2d 832, 836,
If an obligation may not be enforced until an uncertain event occurs, the condition is suspensive. LSA-C.C. art. 1767. A suspensive condition that is unlawful or impossible makes the obligation null. LSA-C.C. art. 1769. Nullity may be raised at any time as a defense against an action on the contract. LSA-C.C. art. 2032. Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision. LSA-C.C. art. 2034; Hudson v. City of Bossier City, 05-0351 (La. 4/17/06), 930 So.2d 881, 894; see also Hamilton v. Anco Insulation, Inc., 02-0221 (La. App. 1st Cir. 2/14/03), 844 So.2d 893, 899.
The record in this case contains considerable information in the briefs to this court and in memoranda and attachments to memoranda that were filed in the district court. Wade's brief to this court advises that he is mentally retarded, having been in special education all his life. For this reason and because he was in prison, he had to put his confidence in Cecil and his attorney to handle the lawsuit and negotiate a reasonable settlement for him. He refused to sign the receipt and release document, because he knew that he could not get the nasal reconstruction surgery that he needed from Dr. Danna while in prison and would not be released from prison in order to have that surgery within the specified time limit. Without the funds set aside for the surgery, there would not be sufficient money left after payment of attorney fees and other expenses for him to get the surgery. A copy of a letter from Cecil describing the mediation process is attached to Wade's "Motion and Order to Hold in Abeyance," filed after the hearing. In it, Cecil explains being told that Marine Services was going bankrupt and had only $59,000 to settle this case and several others the following week. Cecil said he felt pressured to make a decision on the spot without conferring with his brother, or else there would be no money left over once Marine Services attended mediations the coming week for the other pending cases.
We note that unless Wade could show that Marine Service's statements during mediation were false and intended to mislead Cecil to settle the case for less than it was worth, evidence of such verbal pressure during a mediation proceeding would probably not meet the definitions of fraud, duress, or error. More importantly, however, is the fact that Wade did not submit any evidence at the hearing. He did not testify under oath concerning this issue, did not introduce any documents, did not call any witnesses, and did not cross-examine Vinet. As a result, this court cannot determine from the evidence whether Cecil was fraudulently induced to enter into the settlement agreement. We cannot even determine whether Wade's incarceration would indeed have made it impossible for him to obtain the surgery within the time limit specified in the settlement agreement, which the receipt and release stated was March 26, 2008. We can verify his continued incarceration beyond that date from the fact that he was still in prison when communicating with this court about his appeal in July and August 2008. But without evidence from his treating physician or the prison authorities, this court has no way of knowing whether it actually was impossible for Wade to have the proposed surgery during his incarceration and before the deadline set in the settlement agreement. Therefore, although there may be merit in Wade's argument that there was an impossible suspensive condition in the settlement agreement, we cannot reach that conclusion on the basis of this record.
In all other respects, the mediation settlement agreement satisfies the legal requirements. It is written in clear language and there is no proof that an absurd consequence or impossible condition exists. With no evidence in the record other than that submitted by Marine Services, there are no grounds on which the trial court or this court could invalidate the settlement agreement.

Trial Procedure and Continuance
Wade's final arguments to this court concern the conduct of the hearing. He contends that if the court had denied his motions for subpoenas before the day of the hearing, he could have gotten his brother to appear voluntarily and testify on his behalf. He further argues that the court abused its discretion in denying him a continuance and forcing him to proceed with the hearing without representation and without his witness. Finally, he claims the court conducted the hearing in such a way that he was denied his opportunity to present his case.
The trial judge has discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. LSA-C.C.P. art. 1631. The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. Pino v. Gauthier, 633 So.2d 638, 648 (La. App. 1st Cir. 1993), writs denied, 94-0243 and 0260 (La. 3/18/94), 634 So.2d 858 and 859.
The trial court may grant a continuance on peremptory or discretionary grounds. LSA-C.C.P. arts. 1601 and 1602. There are only two peremptory grounds: 1) the party seeking the continuance, despite due diligence, has been unable to obtain material evidence; or 2) a material witness is absent without the contrivance of the party applying for the continuance. LSA-C.C.P. art. 1602; St. Tammany Parish Hosp. v. Bums, 00-2639 (La. App. 1st Cir. 12/28/01), 804 So.2d 960, 963.
A continuance under LSA-C.C.P. art. 1601 rests within the sound discretion of the trial court, and may be granted "if there is good ground therefor." The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance. The trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds, and may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. Absent a clear abuse of discretion in granting or denying a continuance, the ruling of the trial court should not be disturbed on appeal. Denton v. Vidrine, 06-0141 (La. App. 1st Cir. 12/28/06), 951 So.2d 274, 284, writ denied, 07-0172 (La. 5/18/07), 957 So.2d 152.
However, it has never been held that such discretion is absolute or that it may be exercised arbitrarily, and when exercised in a way that deprives a litigant of his day in court, there is an "abuse of discretion." Rainone v. Exxon Corp., 93-2008 (La. App. 1st Cir. 1/13/95), 654 So.2d 707, 710, writ denied, 95-0337 (La. 3/24/95), 655 So.2d 1340. Appellate courts only interfere in matters of trial court discretion with reluctance, but as reviewing courts, have the right and the duty to correct such errors by the trial court in extreme cases. Sauce v. Bussell, 298 So.2d 832, 834 (La. 1974).
After carefully reviewing the transcript of the hearing in this case, we are unable to conclude that this is such an extreme case. At the beginning of the hearing, Wade told the court that he was representing himself due to the fact that his attorney had quit handling his case. He said that he had "a guideline" that he was going by and that he had subpoenaed a witness. At that point, the court explained that his subpoenas were for persons who resided out of state and were beyond the jurisdiction of the court. Wade responded that he thought the court would have notified him and let him know what he was doing wrong at the time, so he could correct it. The court then stated, "Well, the Court is not required to do that. When you represent yourself, you know, you take whatever risks that you take in your representation." Wade replied, "But it wasn't meant for it to be this way. I wasn't trying to represent myself. That was the problem." The court reiterated that it could not compel out-of-state witnesses to appear, at which point Wade said, " Well, then, I'm going to have to try to do a continuance or something, to where I can try to get me an attorney, because, I mean, I can't do it today." The defendant's attorney and Vinet then advised the court that two of the subpoenas had been for them, and the third was for Wade's brother, a Florida resident. The following colloquy then occurred:
Mr. Wade: Well, I really do need an attorney today to represent me or, I mean, I can go by my guidelines, what I had that I done studied up on.
The Court: You say that you need an attorney, but you haven't contacted one before, after losing the attorney?
Mr. Wade: Sir? Repeat again?
The Court: You had an attorney before; didn't you?
Mr. Wade: She quit. Right.
The Court: After she quit, what did you do to get another attorney?
Mr. Wade: Well, I'm locked up. It's hard for me to get one. I mean, I don't know.
The Court: So if we'd continue it, it would still be hard for you to get an attorney; wouldn't it?
Mr. Wade: Well, I mean, I can't represent myself unless I go by the guidelines and what I have here to do.
The Court: That's fine with me.
Mr. Wade: Okay. What it is is it's a conspiracy. I was told that it's a conspiracy 
The Court: Well hold on a second. I'm going to give you a chance to testify. There are two motions on the table. One is a motion to enforce settlement and the other is a motion to declare power of attorney invalid.
A discussion ensued between the court and Todd Crawford, the defendants' attorney, who introduced himself, discussed the matters at issue, and introduced the exhibits that he would be submitting into evidence. The court then asked Wade if he had any objections to the documents, and after some explanation, Wade said he did not accept the power of attorney, the mediation settlement agreement, the notice of deposition, and the letter scheduling the mediation. The court said the remaining documents would be reserved for Vinet's testimony, except for the revocation of the power of attorney. The introduction of that document elicited considerable discussion. After the court explained the concept of introducing an exhibit into evidence, Wade acknowledged that it was his document and that he did not object to it.
At this point, Crawford stated that he was calling Wade as a witness. Obviously confused, Wade questioned why he had to "hit the stand." The court explained that in a civil proceeding, anyone could require an opponent to testify. Wade indicated his acceptance and was sworn in. He identified his signature on the power of attorney and the revocation of power of attorney documents. After some further testimony and explanations from the court, Wade was dismissed and Vinet took the stand.
Following Vinet's testimony, the court stated that he was tendering the witness for cross examination, and explained to Wade that this meant he could ask her questions about her testimony. Wade responded, "I mean, the problem is I got questions and notes I'm  I'm trying to ask out of my own, you know, according to the guideline I have." The court then said, "All right. Well, let me use my guideline." The court then asked some follow-up questions of Vinet, and Crawford also asked her a few more questions, after which the court asked Wade again if he had any questions concerning Vinet's testimony. Wade responded that he wanted to read from his guidelines, indicating he had two hundred questions and offering to show the guidelines to the court. After some back-and-forth comments, the court again directed several questions to Vinet, after which she was allowed to leave the witness stand.
The court then stated it intended to get more testimony from Wade and find out what his issues might be. Wade reiterated that he had given Cecil "full power of attorney," but said there was "a lot more to the case and I'm trying to put it out in the open. ... It was all this scheme on his part. I mean, I got proof." The court asked, "Proof of what?" Wade stated again that it was a scheme, a conspiracy. The court again asked, "To do what?" Wade's only response was, "I can't explain it. I mean, the only way I can do it is go by the guidelines that I got right here." The court continued to question Wade concerning his position and why he believed the settlement should not be enforced. Eventually, Wade just said, "What I'm saying, I can't get all what I need to get out. I mean, all I can say, whatever you rule on, then I'll have to appeal or do whatever I have to do. ... Because if you won't let me put all this stuff out, I can't explain what I'm here to do." The court said, "I'm trying to give you a chance to do it. This is your opportunity." But instead of taking the opportunity, Wade said he wanted to put Vinet back on the stand. After noting that despite being given the chance, Wade had not questioned her when she was on the stand, the court announced that it would grant the motion to enforce the settlement and would sign a judgment to that effect.
The record does not show any peremptory grounds for a continuance. Although a material witness was absent, it was due to Wade's failure to understand the limitations on the court's subpoena power. Even though he was in prison, he could have telephoned his brother before the hearing to find out whether he would appear and testify, instead of relying on the fact that he had not heard from the court that the subpoenas could not be issued. Absent any peremptory grounds for a continuance, the decision was within the discretion of the court. Wade admitted that he had not tried to get another attorney to represent him, although he knew his attorney had withdrawn from his case some time earlier. He implied that he could or would not do so while "locked up." Therefore, unless the case had been continued until his release, a continuance would not have remedied this situation. Additionally, even though he did not have an attorney, Wade had obviously prepared quite extensively to represent himself, and told the court he had "guidelines" to assist him. Therefore, we conclude that the court did not abuse its discretion in deciding to proceed with the hearing.
Nor can we find abuse in the court's handling of the hearing. Every time Wade expressed confusion or a lack of understanding, the court explained what was going on and gave him the chance to respond and participate. Wade had several chances to question Vinet while she was on the stand, but did not do so. When he failed to question her, the court asked her some additional questions to clarify the facts underlying the power of attorney, the mediation, and her withdrawal from the case. The court gave Wade the opportunity to present his position after Vinet had testified, but he could not really explain why he thought the settlement agreement should not be enforced, and he presented no evidence in connection with his testimony. Therefore, this was not a case in which the court denied a litigant his day in court, and we will not overturn the judgment on the grounds of abuse of discretion.

CONCLUSION
For the above-stated reasons, we affirm the judgment of March 7, 2008, and assess all costs of this appeal against Wade.
AFFIRMED.
NOTES
[1] Wade's brother, Cecil, is a Florida resident. The other two subpoena requests were for persons who were at the hearing  Vinet and the defendants' attorney, a Mississippi resident.
[2] A "Notice of Health Care Provider Privilege and Lien" was filed by King Health Care, Inc. on February 28, 2008, for charges and fees incurred for treating Wade after his July 2006 injury. The notice does not show the amount due for those services.
[3] Wade's "Motion for Appeal and Designation of Record" was filed the same day.
[4] On July 9, 2008, while this appeal was pending, the court granted Marine Service's motion to deposit $25,000 into the registry of the court.